## JAMES JACKSON AND ANOTHER v. ROBERT J. BUESGENS AND ANOTHER.

186 N. W. (2d) 184.

April 9, 1971—No. 42377.

*Robert A. Nicklaus,* for appellants.

*Paul A. Melchert, Thomas R. Howe,* and *Melchert, Melchert & Hubert,* for respondents.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Kelly, JJ.

OTIS, JUSTICE.

Plaintiffs, James and Mary Jackson, have recovered a verdict of $4,000 for damages sustained by water seepage in the basement of a home purchased from defendants. The only issues necessary for decision are whether defendants' representations constituted an express oral warranty; whether admissions made by defendants should have been excluded as an offer of settlement; and whether the amount of the award is justified by the evidence.

In response to a newspaper ad, the Jacksons entered negotiations with defendants, Robert J. and Betty Buesgens, for the purchase of a home in Carver County in July 1967. Upon examining the basement, Jackson noticed that the floor was discolored

and the walls were damp. Upon making inquiry, Jackson was assured by defendants that the discoloration was due to water which had been present under the floor when the cement was poured, and that it was not the result of water leaking into the basement. In addition, plaintiffs observed that two rows of cement blocks along the basement wall were tilting outward and seemed to be buckling. Defendants allayed plaintiffs' fears by executing a written warranty against the movement of the basement walls for a period of 5 years. The buckling and moisture were explained by defendants as occurring by reason of water which had entered the basement before it was closed in. Defendants further represented that there was tiling and cross-tiling around the entire basement leading to a sump pump which drained into a septic tank.

Jackson's testimony concerning the express oral warranty was as follows:

"Q   Mr. Jackson, was anything further discussed about water at that particular time?

"A   We asked them more or less directly whether this basement would have a water problem, and Betty told us, 'No, this basement would not have a water problem. Look at what we have done.'

"And she said, 'Isn't that right, Bob?'

"And he said, 'Yes, this basement will not have any water problems.' "

The sale of the house was closed on August 18, 1967. Plaintiffs testified that within a week they discovered water leaking all over the basement floor and complained to defendants. They were assured that this was not an uncommon occurrence in new homes, that such leakage often occurs until soil around the outside walls is settled, and that there would probably be no problem after dirt around the house became solid. In August 1968, when the leakage persisted, the Buesgens drew the water out of the blocks with a hammer and chisel, and suggested that plain-

tiffs install copper tubing to drain the water in the future. The leaking continued, and finally, in October 1968, the Jacksons contracted with D. F. Vizecky Contracting Company, Inc., to waterproof the basement walls for the sum of $2,000. The job involved tearing up a large portion of the basement floor in order to clean out and replace portions of the tiling system which had been constructed by defendants. A representative of the company which made the repairs testified that the original tiling system had been improperly constructed, resulting in water seepage in the basement. After completion of the repairs, the basement remained dry.

■ Defendants admit that they advised plaintiffs that in time the water problem would be gone but deny that it constituted an express warranty. They argue that had this been intended, it would have been included in the written warranty against buckling of the basement walls. We are of the opinion that there was sufficient evidence to permit the jury to find a breach of an express warranty. Labar v. Lindstrom, 158 Minn. 453, 197 N. W. 756. Defendants were experienced realtors who were in the business of constructing and selling new homes. The assurances which defendants gave plaintiffs before the sale was consummated were calculated to induce the purchase. The jury could find that plaintiffs relied on these assurances in completing the transaction.[1]

■ Over objection, Jackson testified as follows to a conversation he had with Mrs. Buesgens in October 1968:

"Betty said to me that it is obvious—was obvious to her that they had made some mistakes in building our home; that they had made mistakes in building previous homes, and like any other person who gets engaged with an occupation, that you learn a little bit each time you build a house, or each time that you

---

[1] See, Annotation, 25 A. L. R. (3d) 409. No question is here raised with respect to the parol evidence rule or the doctrine of merger. Caparrelli v. Rolling Greens, Inc. 39 N. J. 585, 590, 190 A. (2d) 369, 372.

teach a class, or whatever that you do; that they have learned something with each house that they have built, and that she said that they are going to make it right with us; that she said that she felt that Bob did not know how to fix that basement, had made a mistake, and that she was going to see that we could come to some kind of agreement."

Defendants assert that this was part of a settlement negotiation and as such was inadmissible, citing Esser v. Brophey, 212 Minn. 194, 3 N. W. (2d) 3. However, in the Esser case, we pointed out that an admission of liability which is part of an offer of compromise may be received in evidence. The trial court here excluded any testimony which constituted such an offer. Clearly, the statement which was received had to do with liability and as such it was proper to receive it.

■ The question of damages is more troublesome. Jackson testified that he paid $23,900 for the house and that due to the leakage it was worth only $19,000 or $20,000. Defendants assert that the measure of damages was the reasonable cost of repair, which was $2,000, citing Restatement, Contracts, § 346(1)(a). There was, however, additional testimony that the leakage rendered the basement unusable and resulted in damage to bedding, carpeting, draperies, and clothing stored in the basement. Evidence concerning the value of these items was vague and unsatisfactory.

Defendants challenge the foundation for plaintiffs' testimony concerning the dimunution in value of their home occasioned by the water seepage. However, we have held that the testimony of an owner as to the value of his property may be received, and lack of foundation goes to the weight of the testimony but not to its admissibility. L'Evesque v. Rognrud, 254 Minn. 55, 58, 93 N. W. (2d) 672, 676; State, by Mattson, v. Schoberg, 279 Minn. 145, 150, 155 N. W. (2d) 750, 754. Nevertheless, we are not satisfied that the award over and above the cost of repair is supported by the evidence. The annoyance and inconvenience which

plaintiffs suffered lasted for only a little more than a year and was completely corrected for the sum of $2,000 by the work done by Vizecky Contracting Company. Under such circumstances, as far as the real estate is concerned, the rule we applied in H. P. Droher & Sons v. Toushin, 250 Minn. 490, 85 N. W. (2d) 273, restricts recovery to the cost of repairing the defects, plus a reasonable amount for the loss of use of the basement and damage to personal property. Marshall v. Marvin H. Anderson Const. Co. 283 Minn. 320, 328, 167 N. W. (2d) 724, 728. Because of the unsatisfactory proof of damages, we hold that a new trial on that issue is required unless plaintiffs consent to a remittitur of $1,000.

No costs shall be allowed to either party.

Reversed and remanded.