115 Wn.2d 506 (1990)
799 P.2d 250
ATHERTON CONDOMINIUM APARTMENT-OWNERS ASSOCIATION BOARD OF DIRECTORS, Petitioner,
v.
BLUME DEVELOPMENT COMPANY, ET AL, Respondents.
No. 56677-1.
The Supreme Court of Washington, En Banc.
November 1, 1990.
*509 Philip A. Talmadge (of Talmadge Friedman & Cutler) and Bo Barker (of Bo Barker, P.S.), for petitioner.
*510 Anderson Hunter Law Firm, H. Scott Holte, Jeffrey H. Capeloto, and Todd R. Startzel, for respondent Blume Development Co.
John T. Arrabito, P.C., and John T. Arrabito, for respondents Westlin.
Martin, Bischoff, Templeton, Ericsson & Langslet, by David P. Templeton, Stephanie L. Striffler, and Michael G. Harting, for respondents City of Lynnwood, et al.
Bryan P. Harnetiaux and Robert H. Whaley on behalf of Washington State Trial Lawyers Association, amici curiae for petitioner.
Fred D. Gentry on behalf of Washington Association of Fire Chiefs; Katrin Frank on behalf of the Seattle Fire Fighters Union; Ron Meyers on behalf of the Tacoma Professional Fire Fighters Union; James L. Strichartz on behalf of the Community Associations Institute; Ron Perey on behalf of Gordon F. Vickery; Robert B. Gould on behalf of Abraham B. Bergman, amici curiae for petitioner.
J. Richard Aramburu and Jeffrey M. Eustis on behalf of "Rebound", amici curiae for petitioner.
Jeffrey B. Mahan on behalf of Washington Defense Trial Lawyers, amicus curiae for respondents.
DURHAM, J.
Atherton Condominium Apartment-Owners Association Board of Directors (Owners) appeal from orders of summary judgment dismissing virtually all of their construction defect claims. Blume Development Company and its partners (Blume)[1] cross-appeal, seeking dismissal of Owners' remaining claims. We affirm in part and reverse in part.
*511 Owners represent condominium owners in the Atherton complex (Atherton), which is located in the City of Lynnwood. It consists of two 3-story buildings, each of which contains 10 condominium units. In each building, there are four units on the first floor, and six townhouse units which occupy the second and third floors. Blume was the original owner, developer, construction contractor, and vendor of the Atherton condominiums. Donald R. Westlin was hired by Blume to be the project design architect for Atherton.
In November 1978, pursuant to Uniform Building Code (UBC) § 301(c), Westlin submitted two identical sets of architectural plans for the Atherton project to the City of Lynnwood (Lynnwood) for plan review and issuance of building permits. The plans were reviewed by John Farrens, a registered licensed architect and head of the Lynnwood Building Department. At that time, the applicable Lynnwood building code was the 1973 edition of the UBC.
On January 12, 1979, after reviewing the Atherton plans and finding some UBC violations, Farrens responded with a plan correction sheet. The sheet enumerated 17 specific items which Lynnwood either wanted more fully addressed or changed before it would issue any permits. Most of the changes related to UBC fire resistivity standards.
On January 17, 1979, in response to the plan review, Westlin submitted revised architectural plans. Subject to further changes which he noted on the revised plans, Farrens approved the revised plans on February 21, 1979. Upon receipt of the appropriate permit fees, Lynnwood issued the applicable UBC building permits. During the construction process, the Atherton project was regularly inspected by Lynnwood building officials, usually Barbara Collier.
The construction of building one was substantially completed in November 1979. The building was ultimately approved as constructed and Farrens issued a certificate of occupancy. Construction of building two was substantially *512 completed in mid-1980. The building was approved as constructed and Farrens issued a certificate of occupancy. The certificates of occupancy certified that Atherton complied with all applicable provisions of the UBC. On June 16, 1981, Blume turned the management of Atherton over to the Homeowners Association.
In 1982, portions of the exterior walls of the Atherton buildings, originally believed to be stucco, began to crack and fall off. Owners contacted Blume and he completed repairs without charge. Further problems were encountered with the exterior in 1984 and 1985, and Blume was again asked to perform repairs. This time, however, Blume refused. Owners had the exterior repaired at their own expense.
Owners learned that the product which Blume had originally applied to the exterior walls was not stucco, as Owners believed. Rather, Blume had used Kolor Krete, an allegedly inferior stucco substitute, which could be expected to deteriorate further.[2] The use of Kolor Krete was not authorized in the Atherton plans and does not satisfy the UBC 1-hour fire resistivity standard. Owners also learned that Atherton contained several other construction defects.
Specifically, Owners alleged that the following defects also violate the 1973 UBC fire resistivity standards[3] and profoundly compromise the safety of Atherton: omission of one-half-inch plywood underlayment on the third floor, the absence of any gypsum on the inner surface of the mansard walls, a single layer roof/ceiling assembly, carport ceilings which do not satisfy the UBC 1-hour fire resistive construction standard, inadequate exits on the third floor, and unsafe prefabricated fireplaces which are not those depicted on the plans.
*513 On January 3, 1986, pursuant to RCW 64.32.240, Owners filed suit against Blume, Westlin, and the City of Lynnwood and employees of its building department. Owners sought damages for the cost to repair the alleged construction defects. With respect to Blume, Owners alleged that Blume failed to construct Atherton in accordance with the approved plans and the UBC fire resistivity standards. Accordingly, they brought an action for negligence, negligence per se, nuisance, breach of the implied warranty of habitability, and fraudulent concealment of defects. With respect to Westlin, Owners alleged that he failed to design Atherton in compliance with the UBC and brought an action against him for negligent design. Finally, Owners alleged that Lynnwood and employees Farrens and Collier failed to require that Atherton be designed and constructed in compliance with the UBC.
On September 2, 1987, Lynnwood moved for summary judgment on the grounds that under the public duty doctrine, Lynnwood and its employees owed no duty to Owners. In addition, Lynnwood argued that Owners' claim was time barred by the statute of limitation. On November 30, 1987, Judge Bibb entered an order granting summary judgment dismissing all claims against Lynnwood and its employees pursuant to the public duty doctrine. The order, however, denied Lynnwood's motion to dismiss the case pursuant to the statute of limitation and the statute of repose.[4]
On February 5, 1988, Owners filed an amended motion for partial summary judgment against defendants Blume and Westlin, requesting the court to determine, as a matter of law, that the mansard wall and the floor/ceiling assembly *514 did not satisfy the UBC fire resistivity standard. On February 8, 1988, Judge Knight granted partial summary judgment in favor of defendant Westlin determining that Westlin, as the design architect, had no liability as to the issue of 1-hour fire resistivity.
On February 9, 1988, defendant Blume filed a motion for summary judgment of dismissal of Owners' amended complaint with respect to all of Owners' theories of recovery, or in the alternative, partial summary judgment declaring that Owners have not sustained any damages for alleged noncompliance with the UBC and that Owners' claims are time barred by the applicable statute of limitation. Defendant Westlin later joined in Blume's motion for summary judgment.
On February 19 and 22, 1988, Judge Knight heard oral argument on Blume's motion for summary judgment. Judge Knight concluded that even if Atherton was not constructed in compliance with UBC fire resistivity standards, Owners did not have an actionable claim against Blume or Westlin. Accordingly, Judge Knight orally granted the motion for summary judgment in favor of Blume and Westlin dismissing all of Owners' claims except for the three express warranty claims of Pamela Foster-Macri, Fern Martinson, and Glenn Ortloff. In addition, Judge Knight denied a motion on behalf of the Owners to strike expert testimony concerning interpretation of the UBC and a motion for summary judgment against defendants Blume and Westlin concerning fire resistivity of the mansard wall and the third floor.
On March 16, 1988, following the trial court's decision granting the other defendants' motions for summary judgment, Lynnwood, pursuant to CR 54(b), filed a motion for final summary judgment. On March 31, 1988, Judge Bibb entered final judgment in favor of Lynnwood and its employees. On April 8, 1988, pursuant to CR 54(b), Judge Knight entered a written order of final summary judgment dismissing all of Owners' claims except for the three express warranty claims.
*515 On April 27, 1988, Owners timely filed notice of appeal. Owners appealed (1) the entry of summary judgment of dismissal which dismissed all of their claims except the three express warranty claims, (2) the order of final judgment dismissing their claims against Lynnwood and its employees, (3) the order denying their motion to strike certain testimony, and (4) the order granting summary judgment in favor of Lynnwood and its employees. Blume timely filed notice of cross appeal seeking dismissal of the three express warranty claims.
On September 5, 1989, in an unpublished opinion, the Court of Appeals issued its decision. Atherton Condominium Apartment-Owners Ass'n Bd. of Directors v. Blume Dev. Co., noted at 55 Wn. App. 1027 (1989). The Court of Appeals reversed the trial court's dismissal of Owners' claim against Blume for fraudulent concealment and reversed the trial court's retention of Macri's and Ortloff's express warranty claims. All other aspects of the trial court's orders were affirmed. Owners filed a motion for discretionary review, which we granted.
Several issues are presented. First, did the trial court properly grant Blume's motion for summary judgment which dismissed Owners' claims for breach of implied warranty, fraudulent concealment, negligent construction, and nuisance. Second, did the trial court properly grant Westlin's motion for summary judgment dismissing Owners' claim for negligent design. Third, does the public duty doctrine require summary judgment of dismissal of the claims against Lynnwood and its building department employees Farrens and Collier. Fourth, did the trial court properly reject Owners' motion to strike certain testimony of experts. Finally, was the motion for summary judgment dismissing the express oral warranty claims of Atherton condominium owners Pamela Foster-Macri, Fern Martinson, and Glenn Ortloff properly denied.
[1] We begin by identifying the appropriate standard of review. Owners appeal from trial court orders granting summary judgment of dismissal in favor of defendants. In *516 our review of an order of summary judgment, we engage in the same inquiry as the trial court. E.g., Marincovich v. Tarabochia, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact is one upon which the outcome of the litigation depends in whole or in part. Morris v. McNicol, 83 Wn.2d 491, 494, 519 P.2d 7 (1974).
In a summary judgment motion, the burden is on the moving party to demonstrate that there is no genuine issue as to a material fact and that, as a matter of law, summary judgment is proper. See Hartley v. State, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). The moving party is held to a strict standard. Any doubts as to the existence of a genuine issue of material fact is resolved against the moving party. In addition, we consider all the facts submitted and the reasonable inferences therefrom in the light most favorable to the nonmoving party. E.g., Citizens for Clean Air v. Spokane, 114 Wn.2d 20, 38, 785 P.2d 447 (1990).
[2] If the moving party satisfies its burden, the nonmoving party must present evidence that demonstrates that material facts are in dispute. Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case, then the trial court should grant the motion. Hines v. Data Line Sys., Inc., 114 Wn.2d 127, 148, 787 P.2d 8 (1990).
In the present case, for purposes of review, we consider all facts and the reasonable inferences therefrom in the light most favorable to Owners as the nonmoving party. Accordingly, we assume that Atherton did not comply with the UBC fire resistivity standards. At issue, therefore, is whether the trial court correctly determined, given the facts *517 of this case, that Owners failed to establish a legally cognizable cause of action.

OWNERS' CLAIMS AGAINST BLUME
We begin our analysis with Owners' claims against Blume. Owners assign error to the trial court's summary judgment order dismissing their claims against Blume for breach of implied warranty, fraudulent concealment, negligent construction, and nuisance. We consider each claim separately.

Implied Warranty of Habitability
Owners first assign error to the trial court's summary judgment order dismissing their claim for breach of the implied warranty of habitability.[5] Owners contend that Blume's construction of Atherton in violation of the UBC fire resistivity standards breached the implied warranty of habitability. In deciding the summary judgment motion, the trial court assumed that Atherton did not satisfy the UBC 1-hour fire resistivity standards, but nonetheless determined, as a matter of law, that Owners' claim did "not fall within the limited sphere of the warranty of habitability". The Court of Appeals affirmed the trial court.
Owners argue that the trial court erred in dismissing the claim as a matter of law. Blume responds that the implied warranty claim fails because Owners do not establish that there is structural damage to the condominium.
In the sale of new residential dwellings, the doctrine of caveat emptor has properly been eroded by the winds of contemporary realities. See generally McDonald v. Mianecki, 79 N.J. 275, 283-91, 398 A.2d 1283 (1979); Humber v. Morton, 426 S.W.2d 554, 557-62 (Tex. 1968). The fictional foundation of the doctrine was aptly dispelled in Chandler v. Madsen, 197 Mont. 234, 642 P.2d 1028 (1982), where the Montana Supreme Court explained:

*518 Caveat emptor, which traditionally has applied to sales of real estate, developed at a time when a buyer and seller were in equal bargaining positions. They were of comparable skill and knowledge and each could protect himself in a transaction.
In the modern marketplace that equality of position no longer necessarily exists, and a growing number of jurisdictions have abandoned caveat emptor in favor of implied warranties where a builder-vendor sells a new residence.
Chandler, at 238.[6] This metamorphosis, as one court has observed, "brings the law much closer to the realities of the market for new homes than does the anachronistic maxim of caveat emptor." David v. B&J Holding Corp., 349 So.2d 676, 678 (Fla. Dist. Ct. App. 1977) (quoting Gable v. Silver, 258 So.2d 11, 17 (Fla. Dist. Ct. App.), cert. discharged, 264 So.2d 418 (Fla. 1972)).
The seminal case concerning implied warranties in the sale of new residential dwellings is Carpenter v. Donohoe, 154 Colo. 78, 388 P.2d 399 (1964). In Carpenter, the Supreme Court of Colorado held that builder-vendors of residential dwellings impliedly warranted that the homes they constructed complied with applicable building code requirements, were built in a workmanlike manner, and were suitable for habitation. Carpenter, at 83-84.
In House v. Thornton, 76 Wn.2d 428, 457 P.2d 199 (1969), Washington followed Carpenter and abandoned the doctrine of caveat emptor as applied to the sale of new residential dwellings by builder-vendors, and recognized an implied warranty. Based upon the facts of the case, this court stated:
[W]hen a vendor-builder sells a new house to its first intended occupant, he impliedly warrants that the foundations supporting it are firm and secure and that the house is structurally safe *519 for the buyer's intended purpose of living in it. Current literature on the subject overwhelmingly supports ... an implied warranty of fitness in the sale of new houses.
House, at 436.[7]
[3] The entire realm of defects which are within the purview of this implied warranty has not been precisely defined. Instead, "[a] more precise definition of the scope of this warranty must await delineation on a case by case basis." (Footnote omitted.) Yepsen v. Burgess, 269 Or. 635, 641, 525 P.2d 1019 (1974).
In the present case, the trial court dismissed Owners' claim, as a matter of law, because the claim did "not fall within the limited sphere of the warranty of habitability". Both the Court of Appeals and Blume rely on Stuart v. Coldwell Banker Comm'l Group, Inc., 109 Wn.2d 406, 745 P.2d 1284 (1987) to support their restrictive interpretations of the implied warranty of habitability. The Court of Appeals reasoned as follows:
The principal defect Owners allege violates this warranty is that Blume's building code violations will enable fire to spread more rapidly between units than it would in a properly constructed building. While we acknowledge the seriousness of this problem, we do not believe that it constitutes a defect which "profoundly compromises" Atherton as a dwelling, or makes it unfit for habitation within the meaning of Stuart. Although Atherton may be less safe during a fire than it should be, on an everyday basis it can still be used for its intended purpose.
Atherton Condominium Apartment-Owners Association Board of Directors v. Blume Development Company, cause *520 23427-7-I slip op. at 7 (Sept. 5, 1989). We disagree with this casual characterization of the UBC fire resistivity requirements.
In Stuart, a homeowners association argued that the condominium decks, walkways, and railings were improperly constructed and dangerous. The limited record indicated that the decks, walkways, and railings did not meet UBC water-tightness requirements and this led to rotting and substantial impairment of those structures. This court found that the trial court record was inadequate and remanded the case to the trial court for a determination as to which of the condominium units had walkways which made it unsafe to enter them. Stuart, at 417.
[4] Blume relies on language from Stuart which states that the implied warranty of habitability applies only to "egregious defects in the fundamental structure of a home." Stuart, at 416. Blume contends that because Atherton's fire resistivity problems are neither egregious nor structural, the implied warranty is not applicable. We disagree. As noted above, the interpretation of the implied warranty at issue here has been left to a case-by-case basis. In a vacuum, a strongly worded phrase like "egregious defects" could easily be construed as unnecessarily constrictive. However, as is frequently the case in appellate interpretation, applying earlier formulas in a new factual context creates new shading, new shadows. We conclude that the facts of this case clearly demonstrate the wisdom of applying the implied warranty of habitability to these circumstances.
The allegations raised here present serious questions of the safety of the Atherton condominium, a consideration recognized in Stuart. Stuart, at 417. The claimed violations of the UBC fire resistivity requirements are serious and substantial and, if proven, have the potential to severely restrict the habitability of the condominiums. As such, the Owners' claims fall within the purview of the warranty of habitability, at least for purposes of the summary judgment proceedings.
*521 [5] Several policy considerations support our interpretation of the implied warranty of habitability. First, the implied warranty of habitability protects purchasers from latent construction defects. As the court stated in Christensen v. R.D. Sell Constr. Co., 774 S.W.2d 535 (Mo. Ct. App. 1989):
The structural quality of a house, by its very nature, is nearly impossible to determine by inspection after the house is built, since many of the most important elements of its construction are hidden from view. The ordinary `consumer' can determine little about the soundness of the construction but must rely upon the fact that the vendor-builder holds the structure out to the public as fit for use as a residence, and of being of reasonable quality.
Christensen, at 538 (quoting Smith v. Old Warson Dev. Co., 479 S.W.2d 795, 799 (Mo. 1972)). From the evidence before us, it appears that the alleged defects at Atherton are not readily discoverable by the average purchaser. The defects are latent structural deficiencies primarily pertaining to the inner construction of the floors and ceilings. Ascertaining whether Atherton is constructed in compliance with the fire resistivity standards of the applicable building code would be quite difficult.
Second, the implied warranty of habitability fixes liability for defective construction on the builder-vendor rather than the purchaser because the builder-vendor's position throughout the construction process is markedly superior to that of the purchaser, and because the builder-vendor has a far better opportunity to avoid the alleged defect. House, 76 Wn.2d at 435. See also Degnan v. Executive Homes, Inc., 215 Mont. 162, 166, 696 P.2d 431 (1985); Sloat v. Matheny, 625 P.2d 1031, 1033 (Colo. 1981). In the present case, Blume was in a decidedly superior position to prevent the occurrence of the alleged defects. In the process of constructing Atherton, Blume had sole control over compliance with the applicable building code.
Third, the implied warranty of habitability should attach because a purchaser:

*522 has a right to expect to receive that for which he has bargained and that which the builder-vendor has agreed to construct and convey to him, that is, a house that is reasonably fit for use as a residence.
Frickel v. Sunnyside Enters., Inc., 106 Wn.2d 714, 719-20, 725 P.2d 422 (1986) (quoting Petersen v. Hubschman Constr. Co., 76 Ill.2d 31, 40, 389 N.E.2d 1154 (1979)). See also McDonald v. Mianecki, 79 N.J. 275, 289, 398 A.2d 1283 (1979). In the present case, Owners, as purchasers of new condominium units, have a right to expect that the condominium complex will comply with the fire safety provisions of the applicable building code. This expectation is neither unreasonable nor harsh on a builder-vendor.
[6] Although the implied warranty of habitability does not extend to "mere defects in workmanship" or impose upon a builder-vendor an obligation to construct a perfect residential dwelling,[8]Stuart v. Coldwell Banker Comm'l Group, Inc., 109 Wn.2d 406, 417, 745 P.2d 1284 (1987); accord, Klos v. Gockel, 87 Wn.2d 567, 571-72, 554 P.2d 1349 (1976), the alleged defects in this case are not "mere defects in workmanship." The alleged building code violations are neither trivial nor aesthetic concerns, nor those involving procedural breaches.[9] Rather, the alleged building code violations concern fundamental fire safety provisions regarding the construction of Atherton's floors and ceilings. As such, the alleged defects are within the purview of the implied warranty of habitability and should not have been dismissed on summary judgment as a matter of law.[10]

*523 Fraudulent Concealment
Owners also assign error to the trial court's summary judgment order dismissing their claim for fraudulent concealment. They contend that Blume's failure to disclose its departure from the plans approved by Lynnwood and its alleged violations of the UBC constitutes fraudulent concealment. The trial court, however, dismissed the fraudulent concealment claim on the basis that there was no evidence of intentional concealment. The Court of Appeals reversed the trial court and we agree. The trial court erroneously determined that intent, as opposed to knowledge, is an element of the cause of action. The appropriate inquiry is if Owners provided evidence of Blume's knowledge sufficient to create a question of fact.
In the sale of residential dwellings, the doctrine of caveat emptor no longer applies "to the complete exclusion of any moral and legal obligation to disclose material facts not readily observable upon reasonable inspection by the purchaser." Hughes v. Stusser, 68 Wn.2d 707, 711, 415 P.2d 89 (1966). In Obde v. Schlemeyer, 56 Wn.2d 449, 353 P.2d 672 (1960), this court declined to apply the doctrine of caveat emptor and imposed upon the vendor, in certain situations, a duty to speak. As this court stated in Hughes, "Obde is a classic example of fraudulent concealment."[11]Hughes, at 710.
In Obde, the vendors sold a residence which was infested with termites. Although the vendors knew there was widespread termite infestation in the residence, the purchasers *524 did not. The vendors argued that they had no duty to inform the purchasers of the termite condition because the purchasers had not so inquired. This court, however, held that such a duty existed. Obde, at 453. Relying on Perkins v. Marsh, 179 Wash. 362, 37 P.2d 689 (1934), a landlord-tenant case, the court stated:
"Where there are concealed defects in demised premises, dangerous to the property, health or life of the tenant, which defects are known to the landlord when the lease is made, but unknown to the tenant, and which a careful examination on his part would not disclose, it is the landlord's duty to disclose them to the tenant before leasing, and his failure to do so amounts to a fraud."
We deem this rule to be equally applicable to the vendor-purchaser relationship.
Obde, at 452 (quoting Perkins, at 365).
[7] Accordingly, a builder-vendor's duty to speak arises in those situations where: there is a concealed defect in the premises of the residential dwelling, the builder-vendor has knowledge of the defect, the defect is dangerous to the property, health or life of the purchaser, and the defect is unknown to the purchaser and a careful, reasonable inspection on the part of the purchaser would not disclose the defect. Obde, at 452-53. In addition, the defect complained of must "substantially affect[] adversely the value of the property or operate[] to materially impair or defeat the purpose of the transaction." Mitchell v. Straith, 40 Wn. App. 405, 411, 698 P.2d 609 (1985). See also Luxon v. Caviezel, 42 Wn. App. 261, 264-65, 710 P.2d 809 (1985). In such a situation, a builder-vendor's failure to inform the purchasers of the defect constitutes fraudulent concealment. Obde, 56 Wn.2d at 452 (duty to inform purchaser of termite condition); Perkins, 179 Wash. at 367 (duty to inform lessee of failure of the drainage system to carry away water during the rainy season); Luxon, 42 Wn. App. at 264-65 (duty to inform purchaser of inadequate septic system); Sorrell v. Young, 6 Wn. App. 220, 225, 491 P.2d 1312 (1971) (duty to inform purchaser that lot was built up to street level with fill).
*525 [8] Although a fraudulent concealment claim may exist even though the purchaser makes no inquiries which would lead him to ascertain the concealed defect, Obde, at 453, in those situations where a purchaser discovers evidence of a defect, the purchaser is obligated to inquire further. Puget Sound Serv. Corp. v. Dalarna Mgt. Corp., 51 Wn. App. 209, 752 P.2d 1353, review denied, 111 Wn.2d 1007 (1988). Simply stated, fraudulent concealment does not extend to those situations where the defect is apparent.
Review of the evidence before the trial court establishes that there is a factual question as to whether Blume fraudulently concealed construction practices which violated the UBC from Atherton purchasers. The evidence supports a reasonable inference that Blume knew that it deviated from the approved construction plans in ways related to fire resistivity and substitution of Kolor Krete for stucco as the exterior wall covering.[12] The evidence also indicates that the alleged UBC violations are not apparent and would not be revealed through a purchaser's reasonably careful inspection. It is a sharply disputed issue of fact whether the construction deviations create a danger to Atherton purchasers. Finally, as to materiality, we find the evidence sufficient to create a question of fact. Although Owners supply no specific evidence of diminution of value resulting from the construction deviations, it may reasonably be inferred that a condominium constructed in a manner that will not adequately resist the spread of fire is substantially less valuable than one constructed in compliance with fire resistivity standards, and that bringing Atherton into compliance with building code would be a substantial expenditure. Moreover, a jury could reasonably conclude that the construction deviations pose a potential danger to the lives of Owners and that this danger materially impairs or defeats the purpose of the Blume-Owners transaction.
*526 In sum, the trial court erred in granting summary judgment dismissing Owners' claim for fraudulent concealment.

Negligent Construction
Owners next assign error to the trial court's summary judgment order dismissing their claim for negligent construction.[13] Owners seek damages for the cost to repair the alleged construction defects at Atherton. The trial court correctly dismissed this claim on the basis that Washington does not recognize such a cause of action.
[9] Stuart v. Coldwell Banker Comm'l Group, Inc., 109 Wn.2d 406, 745 P.2d 1284 (1987) is controlling. Stuart involved, inter alia, a claim for negligent construction brought by a condominium homeowners association against the builder-vendor for alleged defects in private decks and walkways constructed in violation of the applicable UBC provisions. In Stuart, the plaintiffs had not suffered any personal injuries, nor was there any evidence of physical damage. Rather, the plaintiffs had suffered economic damage; i.e., the cost to repair the deteriorated decks and walkways. Although the trial court allowed the claim, we reversed on the basis that tort recovery was an inappropriate remedy for the damages pleaded:
Washington does not recognize a cause of action for negligent construction on behalf of individual homeowners. Beyond the terms expressed in the contract of sale, the only recognized duty owing from a builder-vendor of a newly completed residence to its first purchaser is that embodied in the implied warranty of habitability, which arises from the sale transaction.
Stuart, at 417.
In the present case, as in Stuart, Owners have presented no evidence of personal or physical injury resulting from the manner in which Atherton was constructed. Rather, *527 Owners seek only economic damages. Accordingly, their claim is barred by Stuart.[14]

Nuisance
Owners also assign error to the trial court's summary judgment order dismissing their claim for nuisance. Owners contend that Blume's failure to construct Atherton in compliance with the applicable building code fire resistivity standards created a nuisance. Owners rely on UBC § 203, which states that all buildings which constitute a fire hazard are unsafe buildings "declared to be public nuisances". Although the trial court found the nuisance claim to be creative, it nonetheless determined that the nuisance claim was "not supportable by the law." The Court of Appeals affirmed and we agree.
Initially, we question whether Owners may properly bring a nuisance claim against Blume. Although the alleged defects at Atherton may constitute an actionable nuisance, Owners cite no authority for the proposition that a purchaser of a condominium unit may bring a nuisance claim against the builder-vendor.
[10] In any event, we are convinced that the trial court properly dismissed Owners' nuisance claim. In Washington, a "negligence claim presented in the garb of nuisance" need not be considered apart from the negligence claim. Hostetler v. Ward, 41 Wn. App. 343, 360, 704 P.2d 1193 (1985), review denied, 106 Wn.2d 1004 (1986). See also Re v. Tenney, 56 Wn. App. 394, 398 n. 3, 783 P.2d 632 (1989). In those situations where the alleged nuisance is the result of the defendant's alleged negligent conduct, rules of negligence are applied. Hostetler, at 360. Cf. Albin v. National Bank of Commerce, 60 Wn.2d 745, 753, 375 P.2d 487 (1962) (trial court properly refused to give a proposed instruction *528 on nuisance which was based on the same omission to perform a duty which allegedly constituted negligence).
Owners' contention that Atherton is a nuisance is premised on their argument that Blume was negligent in failing to construct Atherton in compliance with the applicable building code. In other words, even if Atherton does constitute a nuisance, the nuisance would be solely the result of Blume's alleged negligent construction. Accordingly, we do not consider the nuisance claim apart from the negligence claim, discussed supra. We conclude that the trial court properly dismissed Owners' nuisance claim.

PUBLIC DUTY DOCTRINE
We next consider Owners' claim against the City of Lynnwood. Owners assign error to the trial court's dismissal of their claim against Lynnwood and its employees. Owners contend that Lynnwood officials negligently administered the UBC in issuing building permits and inspecting Atherton. The trial court determined that even if Lynnwood were negligent, the public duty doctrine precluded liability. The Court of Appeals affirmed the trial court.
Owners offer two arguments. First, Owners contend that the public duty doctrine does not apply to this case. Second, Owners argue that even if the doctrine does apply, this case falls within the failure to enforce exception to the public duty doctrine. We find both positions unconvincing.
[11] As in any negligence action, Owners must establish that Lynnwood owed them a duty of care which was breached. See, e.g., Hartley v. State, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). The determination of the existence of a duty is a question of law. Taylor v. Stevens Cy., 111 Wn.2d 159, 168, 759 P.2d 447 (1988); Mele v. Turner, 106 Wn.2d 73, 76, 720 P.2d 787 (1986); Pedroza v. Bryant, 101 Wn.2d 226, 228, 677 P.2d 166 (1984); Bernethy v. Walt Failor's, Inc., 97 Wn.2d 929, 933, 653 P.2d 280 (1982).[15]
*529 [12] Where the liability of a governmental entity is at issue, the public duty doctrine is employed to determine if the alleged "duty is one owed to a nebulous public or whether that duty is owed to a particular individual." Honcoop v. State, 111 Wn.2d 182, 188, 759 P.2d 1188 (1988). The public duty doctrine precludes liability for a public official's negligent conduct unless it is established that "`the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general ...'". Taylor, at 163 (quoting J & B Dev. Co. v. King Cy., 100 Wn.2d 299, 303, 669 P.2d 468, 41 A.L.R.4th 86 (1983)). See also Oberg v. Department of Natural Resources, 114 Wn.2d 278, 282, 787 P.2d 918 (1990); Honcoop, 111 Wn.2d at 188; Meaney v. Dodd, 111 Wn.2d 174, 178, 759 P.2d 455 (1988); Bailey v. Forks, 108 Wn.2d 262, 265, 737 P.2d 1257, 753 P.2d 523 (1987). In the present case, the question is whether the UBC imposes a duty upon Lynnwood and its building officials which is owed to the public as a whole or whether the duty is owed to the Owners as individuals.
[13] Taylor is instructive. There, the buyers of a house which did not comply with the applicable building code sought damages from the sellers, the sellers' realtor, and the County which inspected the house and issued a building permit. We held that the County owed the buyers no actionable duty. Taylor, at 172. Pursuant to the public duty doctrine, governmental entities do not owe an actionable duty of care to individuals for negligent failure to detect building code violations under the UBC. Specifically, we stated that:

*530 [N]o duty is owed by local government to a claimant alleging negligent issuance of a building permit or negligent inspection to determine compliance with building codes. The duty to ensure compliance rests with individual permit applicants, builders and developers.... [L]ocal government owes no duty of care to ensure compliance with the codes.
Taylor, at 168. On this issue, the court's opinion was unanimous. Taylor, at 173 (Utter, J., concurring). We noted that "[s]everal policy considerations compel our conclusion that it is the duty of individuals, not local government, to ensure compliance with building codes." Taylor, at 168. First, the primary purpose of building codes is to protect the public safety, not to compensate individuals for economic loss. Second, burdening local government to ensure compliance with code requirements may well cause serious budgetary and personnel costs more aptly borne by the builder. Taylor, at 168-69. Third, imposing liability for noncompliance on the builder is consistent with the vested rights doctrine which protects the right to develop land only if building codes are fully complied with. Taylor, at 169-70 (citing Comment, Washington's Zoning Vested Rights Doctrine, 57 Wash. L. Rev. 139, 143 (1981); Nolan v. Blackwell, 123 Wash. 504, 212 P. 1048 (1923)). We concluded that the public duty doctrine is premised upon the well reasoned policy that "legislative enactments for the public welfare should not be discouraged by subjecting a governmental entity to unlimited liability." Taylor, at 170. No persuasive reason has been presented in this case to warrant departing from Taylor. Accordingly, we reject Owners' contention that the public duty doctrine should not apply to claims that public officials negligently administered the UBC.
[14] There is, however, an exception to the public duty doctrine which is relevant to this case.[16]See Bailey, 108 *531 Wn.2d at 268. The failure to enforce exception recognizes that:
[A] general duty of care owed to the public can be owed to an individual
where [1] governmental agents responsible for enforcing statutory requirements [2] possess actual knowledge of a statutory violation, fail to take corrective action despite a statutory duty to do so, and [3] the plaintiff is within the class the statute intended to protect ...
Honcoop, 111 Wn.2d at 190 (quoting Bailey, 108 Wn.2d at 268). As to the performance of building code inspections, the failure to enforce exception to the public duty doctrine recognizes a duty where a public building official has actual knowledge of an inherently dangerous and hazardous condition, is under a duty to correct the problem and fails to meet this duty. See Taylor, 111 Wn.2d at 171-72. See also Zimbelman v. Chaussee Corp., 55 Wn. App. 278, 777 P.2d 32 (1989), review denied, 114 Wn.2d 1007 (1990); Waite v. Whatcom Cy., 54 Wn. App. 682, 686, 775 P.2d 967 (1989). The plaintiff has the burden of establishing each element of the exception. In addition, we construe this exception narrowly. To do otherwise would effectively overrule Taylor and eviscerate the policy considerations therein identified. In a review of a summary judgment proceeding, we must decide if, viewing the evidence in the light most favorable to Owners, there is any evidence that building officials had actual knowledge of an inherently hazardous and dangerous condition.
Here, Owners argue that Lynnwood building officials (Farrens and Collier) possessed actual knowledge of the UBC violations at Atherton. As evidence, Owners point to the plan review sheet which Farrens completed and the notations which he made on the building plans.
[15] Zimbelman v. Chaussee Corp., supra, is instructive in resolving this issue. In Zimbelman, a King County *532 building official reviewed plans for a condominium complex. The building official noted deviations from UBC requirements, including plans which did not conform with exit requirements, insufficient fire-resistant materials in certain required locations, and flooring below minimum fire resistance standards. The building official returned the plans with the necessary corrections noted. A building permit was issued and the building inspected. The building inspector did not note any deficiencies and did not attempt to verify if the previously noted deviations had been corrected. A certificate of occupancy was then issued. The building as constructed, however, violated UBC standards. In finding that there was no evidence that the building official had actual knowledge, the Court of Appeals stated:
Awareness of code violations in the plans as submitted only establishes knowledge of defective plans, not knowledge of defective construction. The County cannot be charged with knowing that the contractor would fail to correct the deficiencies identified by the County in the plans. If the County instead had required submission of amended plans which incorporated the noted corrections, the approval of such corrected plans would not be actual knowledge of the contractor's subsequent failure to build in compliance with code requirements. Even if the County failed to note some defects in the plans, this would not constitute actual knowledge of inherently dangerous and hazardous conditions created by the contractor.
Zimbelman, 55 Wn. App. at 283.
In the present case, Owners argue that the plan correction sheet which Farrens filled out after reviewing the first set of Atherton building plans and the plans which include Farrens' notations constitute actual knowledge of an inherently dangerous and hazardous condition at Atherton. We disagree. The evidence presented to us does not establish actual knowledge on the part of any Lynnwood building official of any inherently hazardous and dangerous condition at Atherton as actually constructed. Zimbelman, 55 Wn. App. at 282. Accord, Coffel v. Clallam Cy., 58 Wn. App. 517, 794 P.2d 513 (1990). Owners' evidence, at most, points to constructive knowledge. Constructive knowledge, however, is not enough. The requirement of actual knowledge does not encompass facts which the building official *533 should have known. Zimbelman, 55 Wn. App. at 282. Thus, Owners have failed to support their claim for invocation of this exception to the public duty doctrine.

MOTION TO STRIKE
Owners next assign error to the trial court's order denying their motion to strike certain affidavits submitted by Blume in support of its motion for summary judgment. The Court of Appeals affirmed the trial court. We agree.
[16] Owners assert that the trial court erred because the affidavits, which concerned construction practices, interpretation of the UBC, and Atherton's compliance with the UBC, improperly offered opinions on questions of law. The record, however, indicates that the trial court did not rely on those parts of the contested evidence which could be characterized as conclusions of law. In ruling on the summary judgment motion, the trial court assumed that there were in fact UBC violations, and that Atherton was not constructed in compliance with the applicable building code. In deciding the summary judgment motion, the trial court dismissed Owners' claims as a matter of law. Accordingly, Owners have not demonstrated prejudicial error in the trial court's decision to deny the motion. Cf. Everett v. Diamond, 30 Wn. App. 787, 792-93, 638 P.2d 605 (1981) (objecting party must explain how the trial court's decision to admit the testimony was prejudicial).

OWNERS' CLAIM AGAINST WESTLIN
Finally, we consider Owners' claim against the architect, Westlin. Owners assign error to the trial court's summary judgment order dismissing their claim against Westlin. The record indicates that Westlin, without presenting additional evidence or legal argument, joined Blume's summary judgment motion. The trial court granted Blume's summary judgment motion and dismissed Owners' claim against Westlin without specifically addressing the claim.
On appeal, Owners appear to argue that Westlin negligently designed Atherton and that this resulted in the defects at issue. We conclude that the trial court did not err in dismissing the claim.
*534 [17] No genuine issue of material fact exists to establish liability on the part of Westlin. The defects which Owners allege exist at Atherton fall into two categories: (1) construction defects for unauthorized departures from the plans as submitted by Westlin and approved by Lynnwood, or (2) construction defects for unauthorized departures from the handwritten notations of John Farrens. Because the alleged defects do not result from compliance with the approved building plans which Westlin designed, Owners' claim was properly dismissed. See Covil v. Robert & Co. Assocs., 112 Ga. App. 163, 168, 144 S.E.2d 450 (1965).
Furthermore, the record indicates that Westlin's involvement with the Atherton project terminated at the point the building permits were issued. Westlin was not engaged to inspect, supervise, or monitor construction at Atherton. Accordingly, under the facts of this case, he has no liability for the alleged defects. See Goette v. Press Bar & Cafe, Inc., 413 N.W.2d 854 (Minn. Ct. App. 1987) (court affirmed a summary judgment in favor of architect when the failure occurred because the contractor deviated from the architect's drawings and the architect had no duty to supervise or inspect the work).
Moreover, Owners cite no authority that Washington recognizes a cause of action in tort by a third party seeking economic loss damages for negligent design against an architect.[17] In sum, the trial court did not err in granting summary judgment dismissing Owners' claim against Westlin.

BLUME'S CROSS APPEAL
Blume assigns error to the trial court's refusal to dismiss the express warranty claims brought on behalf of Pamela Macri, Fern Martinson, and Glenn Ortloff. The three claims *535 regard alleged expressed oral warranties relating to the stucco on the exterior walls of Atherton. Blume alleges that the trial court erroneously determined that there are issues of fact appertaining to the making of express warranties to Macri, Ortloff, and Martinson.[18]
The Court of Appeals affirmed in part and reversed in part. It determined that the evidence was insufficient to create a question of fact as to whether Blume made express warranties to Macri and Ortloff. Martinson's affidavit, however, was held to be sufficient to raise a question of fact as to whether one of Blume's agents made a warranty to Martinson. We agree.
[18] An express oral warranty regarding the construction of a residence exists where a builder or vendor makes oral representations of fact regarding the workmanship and/or materials used in the construction of the residence, prior to the sale, and upon which the buyer relies. See Jackson v. Buesgens, 290 Minn. 78, 81, 186 N.W.2d 184 (1971). See generally Annot., Liability of Builder-Vendor or Other Vendor of New Dwelling for Loss, Injury, or Damage Occasioned by Defective Condition Thereof, 25 A.L.R.3d 383 § 5[a] (1969).[19] The trial court erred in not dismissing Macri and Ortloff's express warranty claims. Macri's affidavit is conclusionary and wholly fails to support the claim in any meaningful way. Ortloff's affidavit is less specific than Macri's. Neither Macri nor Ortloff states who made the alleged representation or whether the alleged representation was made before they contracted to purchase an Atherton condominium. Accordingly, the evidence was insufficient to create a question of fact as to whether Blume made an express oral warranty to Macri or Ortloff. *536 These claims are therefore properly subject to summary judgment of dismissal.
Martinson's affidavit, however, establishes that (1) a realtor showing Martinson the Atherton complex "pointed out ... that the exterior of the buildings was stucco and that stucco was more durable than other building exteriors commonly used for condominium construction" (2) prior to Martinson's purchase of an Atherton condominium, and that (3) Martinson "relied upon this statement" in making the "decision to purchase a unit at Atherton Condominiums." Accordingly, the evidence was sufficient to create a question of fact as to whether one of Blume's agents made an express oral warranty to Martinson and the trial court properly retained this claim.

CONCLUSION
As to the issues pertaining to Owners' appeal, we reverse the trial court's dismissal of Owners' claims against Blume for breach of the implied warranty of habitability and fraudulent concealment. In regard to Blume's cross appeal, we reverse the trial court's retention of Macri's and Ortloff's express warranty claims. These issues are remanded for further proceedings consistent with this opinion. All other aspects of the orders appealed from are affirmed.
CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, and SMITH, JJ., concur.
Reconsideration denied May 16, 1991.
NOTES
[1] Blume Development Company is a partnership consisting of the following five corporate entities: Bill Blume Limited; University Enterprises, Inc.; Thomas F. Carey, M.D., Inc., P.S.; P.R.A. Investments, Inc.; and C.M. Arnim Investments, Inc.
[2] "Kolor Krete" is the trade name for an oil based surfacing material which is approximately one-eighth inch thick.
[3] See UBC §§ 1302(b), 3302(a), 4302(a), 4304(a), 4305(a); UBC Tables 43-B, 43-C, 43-C n. 14.
[4] This ruling confirmed Judge Bibb's letter ruling of October 2, 1987, in which he notified the parties that he would deny the motion for summary judgment based upon the statute of repose, RCW 4.16.310, and the applicable statute of limitation, RCW 4.16.080, against Owners by Blume and Lynnwood.
[5] Because this case arose before the effective date of the Washington condominium act, we do not consider RCW 64.34.445.
[6] See also Frickel v. Sunnyside Enters., Inc., 106 Wn.2d 714, 719, 725 P.2d 422 (1986) ("The implied warranty of habitability or fitness is based upon judicial recognition that the rule of caveat emptor  premised as it is on an arm's length transaction between buyers and sellers of comparable skill and experience  has little relevance when applied to the sale of new homes in today's market.").
[7] Two prerequisites, however, must exist for the implied warranty of habitability to arise from the sale of a new residential dwelling. First, the builder-vendor of the dwelling must be a commercial builder. Second, the unit must be built for sale, rather than personal occupancy. Klos v. Gockel, 87 Wn.2d 567, 570, 554 P.2d 1349 (1976). See also Frickel v. Sunnyside Enters., Inc., supra at 718; Luxon v. Caviezel, 42 Wn. App. 261, 265, 710 P.2d 809 (1985); Boardman v. Dorsett, 38 Wn. App. 338, 341, 685 P.2d 615, review denied, 103 Wn.2d 1006 (1984); Allen v. Anderson, 16 Wn. App. 446, 448, 557 P.2d 24 (1976). In the present case, the record indicates, and the parties do not dispute, that Blume is a commercial builder and that the Atherton condominiums are new dwellings which were built for sale.
[8] See also Waggoner v. Midwestern Dev., Inc., 83 S.D. 57, 68, 154 N.W.2d 803 (1967) ("The builder is not required to construct a perfect house and in determining whether a house is defective the test is reasonableness and not perfection.").
[9] For example, "a claim based solely on the lack of a certificate of occupancy does not fall within the ambit of the implied warranty. The warranty protects against construction defects, not procedural defects." Dann v. Perrotti & Hauptman Dev. Co., 670 P.2d 448, 451 (Colo. Ct. App. 1983).
[10] We note that we are not alone in concluding that a purchaser may bring a cause of action for breach of the implied warranty of habitability in those cases where the builder-vendor deviates from fundamental aspects of the applicable building code. See Vantage View, Inc. v. Bali East Dev. Corp., 421 So.2d 728 (Fla. Dist. Ct. App. 1982); Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc., 406 So.2d 515 (Fla. Dist. Ct. App. 1981); B&J Holding Corp. v. Weiss, 353 So.2d 141 (Fla. Dist. Ct. App. 1977); David v. B&J Holding Corp., 349 So.2d 676 (Fla. Dist. Ct. App. 1977); Carpenter v. Donohoe, 154 Colo. 78, 388 P.2d 399 (1964); Dann v. Perrotti & Hauptman Dev. Co., 670 P.2d 448 (Colo. Ct. App. 1983); Schiro v. W.E. Gould & Co., 18 Ill.2d 538, 165 N.E.2d 286 (1960).
[11] We have subsequently characterized fraudulent concealment as "a species of fraud." Liebergesell v. Evans, 93 Wn.2d 881, 893, 613 P.2d 1170 (1980).
[12] UBC § 303 requires that all work proceed in accordance with the plans as approved by the building department.
[13] Owners also assign error to the trial court's dismissal of their negligence per se claim. The concept of negligence per se, however, does not constitute a separate cause of action. The doctrine merely substitutes a legislatively created standard of care for the lesser common law standard of reasonableness. See Adkins v. Aluminum Co. of Am., 110 Wn.2d 128, 144, 750 P.2d 1257, 756 P.2d 142 (1988).
[14] Although Owners also cite to Washington Water Power Co. v. Graybar Elec. Co., 112 Wn.2d 847, 774 P.2d 1199, 779 P.2d 697 (1989), that case is readily distinguishable. In Graybar, this court held only that Washington's product liability and tort reform act disallows claims for economic loss.
[15] See also Woodrome v. Benton Cy., 56 Wn. App. 400, 403-04, 783 P.2d 1102 (1989); Re v. Tenney, 56 Wn. App. 394, 396, 783 P.2d 632 (1989); Metlow v. Spokane Alcoholic Rehabilitation Ctr., Inc., 55 Wn. App. 845, 849, 781 P.2d 498 (1989); Favors v. Matzke, 53 Wn. App. 789, 796, 770 P.2d 686 (1989); Leyendecker v. Cousins, 53 Wn. App. 769, 775, 770 P.2d 675 (1989); Youngblood v. Schireman, 53 Wn. App. 95, 99, 765 P.2d 1312 (1988); Knott v. Liberty Jewelry & Loan, Inc., 50 Wn. App. 267, 271, 748 P.2d 661, review denied, 110 Wn.2d 1024 (1988). We evaluate public policy considerations in determining the existence of a duty. Bernethy, 97 Wn.2d at 933; Haslund v. Seattle, 86 Wn.2d 607, 611 n. 2, 547 P.2d 1221 (1976).
[16] Although Owners limited their oral argument before this court to the failure to enforce exception, Owners argue in their briefs that the legislative intent exception and the special relationship exception to the public duty doctrine are also applicable. In their petition for review, however, Owners raised only the failure to enforce exception. Accordingly, pursuant to RAP 13.7(b), we consider only the failure to enforce exception. See Clam Shacks of Am., Inc. v. Skagit Cy., 109 Wn.2d 91, 98, 743 P.2d 265 (1987); Garth Parberry Equip. Repairs, Inc. v. James, 101 Wn.2d 220, 225 n. 2, 676 P.2d 470 (1984); Caruso v. Local Union 690 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers, 100 Wn.2d 343, 352, 670 P.2d 240 (1983); State v. Murdock, 91 Wn.2d 336, 339, 588 P.2d 1143 (1979).
[17] Owners also fail to articulate a recognizable negligence claim. Owners do not demonstrate what, if any, duty Westlin owed to them. Owners do not indicate that Westlin breached any duty of care and that such breach was the proximate cause of the alleged damages. In addition, Owners appear to seek only economic loss damages which are not recoverable under tort law. See R. Cushman & T. Bottum, Architect and Engineer Liability: Claims Against Design Professionals § 7.9 (1987).
[18] In addition, Blume alleges that each of these claims are time barred pursuant to RCW 4.16.080(3). We, however, do not reach the statute of limitation question. The record indicates that Blume did not appeal the trial court's denial of its motion for partial summary judgment based upon the statute of limitation.
[19] Cf. Hausken v. Hodson-Feenaughty Co., 109 Wash. 606, 612, 187 P. 319 (1920) ("A warranty is express when the seller makes an affirmation with respect to the article to be sold, pending the treaty of sale, upon which it is intended that the buyer shall rely in making the purchase.").