Kenneth & Angela **CHRISTENSEN, Respondents,**

v.

**R.D. SELL CONSTRUCTION CO., INC., Appellant.**

**No. WD 40674.**

Missouri Court of Appeals, Western District.

July 25, 1989.

---

William Lopez, Kansas City, for appellant.

Alan Dietchman, Kansas City, for respondents.

Before GAITAN, P.J., and MANFORD and ULRICH, JJ.

MANFORD, Judge.

This is a civil proceeding for damages upon a breach of implied warranty. The judgment is affirmed.

Plaintiffs, Mr. & Mrs. Kenneth Christensen, brought this action against defendant, R.D. Sell Construction Company, based upon a breach of implied warranty with respect to the condition of a new house constructed by defendant for plaintiffs. The case was tried to a jury which found in favor of plaintiffs and awarded damages in the sum of $5,000.00. R.D. Sell Construction Company (hereinafter appellant) appeals.

Appellant raises two points on appeal which charge, in summary, that the trial court erred (1) in denying its motion for a directed verdict, and (2) in giving Instruction Number 5 to the jury.

The pertinent facts are as follows. The Christensens signed a contract to purchase their first house from appellant, a builder. Appellant agreed to construct a new house for the Christensens for the price of $67,-

000.00. In January of 1985, the construction was completed, the sale closed, and the Christensens moved into the house.

Approximately two months after the Christensens moved into the house, they noticed that the top of the driveway was peeling, cracking and scaling. Mr. Christensen complained to Don Sells, the owner of appellant construction company, regarding the early deterioration and cracking of the driveway surface. Don Sells stated that the damage to the driveway was caused by salt. He refused to make repairs.

Approximately six months after the Christensens moved into the house, they noticed that the stairs to the front door of the house began to crack where the stairs meet the house foundation. The stairs began to drop and pull away from the house. The Christensens notified appellant of the problem and appellant responded by patching the stairs. However, the patch did not hold. Appellant refused to make additional repairs. Although the stairs and the driveway continued to deteriorate, they were still usable.

Brian Jones, a general contractor, testified on behalf of the Christensens. He observed the defects in the driveway and testified that two-thirds of the driveway surface started to "shale off" to a depth of a quarter-inch to a half-inch. Areas on the driveway had "pock marks" and were chunking off. The coloring of the driveway was unusual. Jones testified that the only way to correct the problem would be to remove the driveway slab and replace it with new concrete. He estimated the repair cost at $3,000.00. Jones observed the front stairs. He testified that the stairs had shifted and left a gap between the stairs and the foundation. A substandard foundation could have caused this problem. The cost of repair was estimated at $2,200.00.

Linda McPhearson, a real estate appraiser, testified on behalf of the Christensens. She appraised the property as of June, 1985 at $62,000.00, given the existing problems with the driveway and stairs. Absent those problems, she valued the property at $67,000.00.

Willard Norton, a professional engineer, testified on behalf of the Christensens. He had inspected the driveway and found the surface pockmarked and spalling (i.e., flaking). The condition was getting progressively worse. He opined that the spalling was caused by very poor quality concrete installed with too much water, careless handling, and poor workmanship. Another cause was the addition of a mixture of flyash to the cement. Norton also inspected the stairs to the front door and testified that the stairs were falling loose and displacing laterally. Soil was dropping away from the underside of the steps. He opined that the quality of workmanship and concrete used in constructing the steps were substandard. On cross-examination, Norton stated that a driveway or steps is not considered part of the structure of the house.

It its first point, R.D. Sell Construction Company contends that the trial court erred in denying its motion for a directed verdict at the close of the plaintiffs' evidence and at the close of all the evidence because plaintiffs failed to establish with substantial and competent evidence that there was a latent structural defect and that the driveway and front stairs are not fit for any ordinary purpose. This first point is taken up and, after full consideration, is found to be without merit and ruled against the appellant for the following reasons.

In reviewing the denial of a defendant's motion for a directed verdict, an appellate court must view the evidence in a light most favorable to the plaintiff to determine whether the plaintiff made a submissible case. The court must give the plaintiff the benefit of all favorable inferences reasonably drawn from the evidence and disregard evidence of the defendant, except insofar as it aids the plaintiff's case. *Sinopole v. Morris*, 743 S.W.2d 81 (Mo. App.1987); *Schnelting v. Coors Dist. Co. of Mo.*, 729 S.W.2d 212, 214 (Mo.App.1987). Guided by these standards in review of the evidence, this court finds no error in the

denial of appellant's motion for a directed verdict. The Christensens presented sufficient evidence to make a submissible case on the theory of breach of the implied warranties in the purchase of a new home.

Appellant further argues that the Christensens failed to prove the existence of latent structural defects in the new home because they failed to present evidence that the defective driveway or defective stairs were an integral part of the structure of the house or supported the structure of the house. In brief, appellant argues that items external to the house or unrelated to the structure of the house cannot be covered by the builder's implied warranties. Appellant's argument is rejected because it misconstrues existing law and inappropriately attempts to narrow the scope of coverage afforded by implied warranties of new home construction.

■ In a departure from the strict rule of caveat emptor, the Missouri Supreme Court held in *Smith v. Old Warson Development Co.*, 479 S.W.2d 795 (Mo. banc 1972), that on the basis of an implied warranty of habitability or quality, the original purchaser of a new home can recover from a builder-vendor for losses or damages resulting from latent defects in construction. In explaining the liability imposed upon the company which builds the new home, the court stressed the latent nature of defects and the inability of the average homebuyer to detect construction flaws:

> Although considered to be a 'real estate' transaction because the ownership to land is transferred, the purchase of a residence is in most cases the purchase of a manufactured product—the house.... The structural quality of a house, by its very nature, is nearly impossible to determine by inspection after the house is built, since many of the most important elements of its construction are hidden from view. The ordinary 'consumer' can determine little about the soundness of the construction but must rely upon the fact that the vendor-builder holds the structure out to the public as

fit for use as a residence, and of being of reasonable quality.

*Smith v. Old Warson Development Co.*, 479 S.W.2d at 799.

The full range of defects which constitute a breach of the implied warranty established by *Old Warson* has not heretofore been defined. *Major v. Rozell*, 618 S.W.2d 293, 296 (Mo.App.1981). Cases dealing with the subject have used the language of structural qualities or structural defects. *Id.* This court rules herein that the breach of that warranty is not limited to such things as the cracking of the foundation or the rotting of floors but may extend to all parts constructed.

There is simply no existing authority for appellant's assertion that a plaintiff must first present evidence of a structural defect, such as a defect in the foundation, basement or load bearing wall, before the plaintiff can recover for defects in the construction of a driveway or stairs leading to the front door of the house. To follow appellant's suggestion could produce some bizarre results. In the case herein, under appellant's view, the driveway could drop forty feet and no liability could occur and/or the stairs could pull completely away from the house and no liability would occur. This court specifically rules herein that an implied warranty protects the purchaser of a newly constructed home from latent defects in its construction, including the driveway and front stairway.

This court acknowledges Norton's expert testimony on cross-examination that a driveway and stairs are not considered, in a pure engineering sense, part of the "structure" of the house. Nevertheless, this court refuses to restrict the legal scope of the implied warranties recognized by the supreme court in *Old Warson* based on Norton's understanding and usage of the word "structure" in his engineering experience.

■ The fact that the Christensens continued to use the defective driveway and stairs to the front door of their house does not defeat their cause of action. *See Major v. Rozell*, 618 S.W.2d 293, 295 (Mo.App. 1981).

The fact that people had continuously lived in the house, or that it was habitable, does not defeat the appellant's cause of action. The implied warranty recognized in *Old Warson* has been expressed in various terms. "Although the court's discussion therein of the claimed implied warranty used the terms 'fitness,' 'quality,' 'merchantability' and, ultimately, 'habitability' interchangeably, it is clear that the warranty imposed in *Old Warson* on the builder-vendor was closely analogous to that found in § 400.2–314, which is therein termed 'implied warranty of merchantability'." Perhaps the best expression was contained in *Old Warson* when the court said, "the test would be one of reasonableness of quality". The fact people could live in the house does not mean the warranty was not breached any more than the fact that an automobile will run, however poorly, means the warranty of merchantability is not breached. (citations omitted)

*Id.*

Appellant's point one is denied.

 In a second point on appeal, appellant contends that the trial court erred in giving Instruction Number 5 to the jury. Appellant argues that Instruction Number 5 was erroneous because by failing to define the words "ordinary purposes" and "used", the instruction gave the jury a roving commission to speculate on these key issues.

Appellant's second point is taken up and, after full consideration, is found to be without merit and ruled against appellant for the following reasons.

The implied warranty imposed in *Old Warson* on the builder-vendor is closely analogous to that found in § 400.2–314, RSMo 1969, which is therein termed "implied warranty of merchantability." *O'Dell v. Custom Builders Corp.*, 560 S.W.2d 862, 870 (Mo. banc 1978).

The Missouri Approved Instructions (MAI) do not contain an instruction applicable to the breach of an implied warranty on a newly constructed house. However, Instruction Number 5 was patterned on MAI 25.08, the verdict-directing instruction for breach of implied warranty of merchantability under the Uniform Commercial Code. MAI 25.08 uses the terms "used" and "fit for one of its ordinary purposes" without indicating a need to further define these terms.

The use of MAI 25.08 as a guide in drafting a verdict-directing instruction based on the doctrine has previously been approved by the courts. *See Lieber v. Bridges*, 650 S.W.2d 688, 690–91 (Mo.App. 1983); and *Ferguson v. Alfred Schroeder Development Co.*, 658 S.W.2d 62, 65 (Mo. App.1983). This court finds no error in the giving of Instruction Number 5, which was concisely patterned after MAI 25.08.

The decision to submit a definitional instruction is a matter within the sound discretion of the trial court. *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 711 (Mo. banc 1984). The trial court did not err or abuse its discretion in refusing to submit definitional instructions on the terms "used" and "fit for one of its ordinary purposes."

Appellant's second point is denied.

Judgment affirmed.

All concur.