[No. 27761-1-II.  Division Two.  December 20, 2002.]

RANDY NORRIS, ET AL., *Appellants*, v. CHURCH & COMPANY, INC., *Respondent*.

---

*Douglas C. Elcock* (of *Grant & Elcock, P.L.L.C.*), for appellants.

*Ray P. Cox, Deborah S.C. Balint,* and *John P. Hayes* (of *Forsberg & Umlauf, P.S.*), for respondent.

ARMSTRONG, J. — Shortly after moving into their new home, Randy and Susan Norris discovered that it leaked. After several years of working unsuccessfully with the builder to solve the problem, the Norrises sued the builder for fraudulently concealing construction defects. The Norrises now appeal a summary judgment in favor of the builder, and both parties have requested attorney fees under RAP 18.1. We reverse, holding that the Norrises produced sufficient evidence of the elements of a fraudulent concealment claim to survive summary judgment.

## FACTS[1]

Randy and Susan Norris purchased a new home from Church & Co., Inc., in 1993 for $632,140. Church completed the home in April 1994, and the Norrises moved in. Late in 1994, the Norrises discovered water leaks around the home's windows and notified Church. Church inspected the home and told the Norrises that clogged gutters probably caused the leaking. The Norrises began to clean the roof gutters regularly, but the leaking continued. Again the Norrises asked Church to fix the problem. Church consulted with the project's roofing contractor who replaced some roofing tiles. The leaking apparently stopped between 1995 and 1997.

In October 1997, the home's front doors began to swell and warp. A subcontractor later repaired the doors. In February 1998, after another Norris complaint, Church caulked some windows. Two months later, Church removed the front door and insulation and discovered additional water damage.

In August 1998, a more thorough inspection revealed significant water damage around the home's front entrance and no caulking or sealing devices around the front win-

---

[1] This case involves only the appellant's fraudulent concealment claim. This court previously addressed the appellant's breach of warranty, breach of contract, negligent misrepresentation, and negligent repair claims in *Norris v. Church & Co.*, noted at 108 Wn. App. 1050, 2001 Wash. App. LEXIS 3100, 2001 WL 1301337, *review denied*, 146 Wn.2d 1021 (2002).

dows and doors. The inspector also found water leaking through a kitchen skylight.

Church testified that he was not aware that a subcontractor had improperly installed gutters during construction. Church conceded, however, that the improperly installed gutters could have caused the leaks. Church was aware that subcontractors had installed windows without flashings or other material between the window assembly and wall cutout to prevent leaks. And he was aware that the home's siding was in contact with the ground, allowing water to wick and penetrate the siding. Nevertheless, until 1998, Church continued to speculate that the leaks resulted from the Norrises' failure to clean out the roof gutters.

## ANALYSIS

In reviewing summary judgment, we consider the evidence and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Mason v. Kenyon Zero Storage*, 71 Wn. App. 5, 8-9, 856 P.2d 410 (1993). Summary judgment is proper "only if reasonable persons could reach only one conclusion from all of the evidence." *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992).

To prove a fraudulent concealment claim, a homeowner must show: (1) a concealed defect in the premises of a residential dwelling, (2) the builder knew of the defect, (3) the defect is dangerous to the property, health, or life of the purchaser, and (4) the defect was unknown to the purchaser and a reasonable inspection by the purchaser would not have disclosed the defect. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 524, 799 P.2d 250 (1990). In addition, the defect must substantially reduce the property's value or operate to materially impair or defeat the transaction's purpose. *Atherton*, 115 Wn.2d at 524. In such a situation, the builder's failure to inform purchasers of the defect constitutes fraudulent concealment. *Atherton*, 115 Wn.2d at 524.

The Norrises argue that Church knew of construction defects with the home and failed to disclose them. Those defects include failing to install window flashing or other material to seal the windows, installing siding that touched the ground, and improperly installing the gutters. The Norrises contend that Church did not disclose these defects at the time of the sale and further concealed them after the sale by consistently telling the Norrises that improper roof maintenance was causing the leaks. The Norrises maintain that although some of the construction details, such as the gutters, were apparent, no reasonable inspection would have revealed the defects with the construction. Finally, the Norrises claim that the defects were dangerous to the property and substantially reduced the home's value.

■ The parties debate whether the Norrises must prove that Church knew of the defects at the time of the sale. The trial court concluded that Church's knowledge is measured at the time of sale. The Norrises claim that Church's continued concealment of the real reasons for the leaks violated his duty to speak. They point to Church's continued reassurances that the problem was clogged gutters, without mentioning improper window sealing, among other things, as a possible problem. *Atherton* is silent as to when a builder's knowledge of a nondisclosed material fact is measured in a fraudulent concealment claim. The court, however, has generally measured knowledge at the time of sale. *See Atherton*, 115 Wn.2d at 525 (builder seller had knowledge of type of building material used prior to sale); *Hughes v. Stusser*, 68 Wn.2d 707, 711, 415 P.2d 89 (1966) (seller had no knowledge of an existing termite or dry rot condition at the time of sale); *Obde v. Schlemeyer*, 56 Wn.2d 449, 453, 353 P.2d 672 (1960) (sellers have duty to inform prospective purchasers); *Luxon v. Caviezel*, 42 Wn. App. 261, 265, 710 P.2d 809 (1985) (seller knew septic tank was inadequate prior to sale).

But we need not decide this issue because the Norrises produced evidence that Church knew of the construction defects at the time of the sale. Church was the general

contractor in charge of supervising the job. The subcontractors improperly installed the gutters and the siding. And during his deposition, Church testified that the problems were readily apparent. Thus, the trier of fact could infer that he must have known of the defects at the time of the construction. Moreover, the subcontractor testified that the subcontracts did not call for flashing or other material to properly seal the windows. Again, a trier of fact could easily conclude that Church knew of the problems with the window seals.

Church does not contest that the extensive water damage was dangerous to the Norrises' property, and that it substantially reduced the home's value.[2]

■ Finally, there is an issue of material fact as to whether the Norrises should have discovered the problems. Plainly, the Norrises were not actually aware of the improperly installed gutters, windows, and siding prior to closing. A professional inspection would most likely have disclosed the construction defects, but owners of newly constructed homes are not obligated to undertake such an inspection.[3] *Christensen v. R.D. Sell Constr. Co.*, 774 S.W.2d 535, 538 (Mo. Ct. App. 1989).

■ Church argues that the Norrises' fraudulent concealment claim is barred by the three-year statute of limitations for fraud. RCW 4.16.080(4). According to Church, the Norrises knew about the leaks in 1994 and did not file this action until June 9, 2000. The record is not clear whether Church properly presented this argument to the trial court. Nevertheless, an issue of material fact exists that prevents

---

[2] Norris offered evidence that the water damage cost an estimated $40,000 to repair and has reduced the home's value by $137,000.

[3] The court in *Christensen v. R.D. Sell Construction Co.*, 774 S.W.2d 535, 538 (Mo. Ct. App. 1989) said:

"The structural quality of a house, by its very nature, is nearly impossible to determine by inspection after the house is built, since many of the most important, elements of its construction are hidden from view. The ordinary 'consumer' can determine little about the soundness of the construction but must rely upon the fact that the vendor-builder holds the structure out to the public as fit for use as a residence, and of being of reasonable quality."

(quoting *Smith v. Old Warson Dev. Co.*, 479 S.W.2d 795, 799 (Mo. 1972)).

summary judgment on this basis. Although the Norrises learned of the leaks early on, a cause of action for fraud does not accrue until the aggrieved party discovers or could have discovered all elements of the claim. *Sherbeck v. Estate of Lyman*, 15 Wn. App. 866, 868-69, 552 P.2d 1076 (1976). There is evidence that the Norrises did not know and could not have discovered the true causes of the leaks, that Church knew of the true causes, or the extent of damage until within three years of filing the action. Church is not entitled to summary judgment on the basis of the statute of limitations.

■ ■ The parties have requested attorney fees under RAP 18.1. "A party is entitled to attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party is the substantially prevailing party." *Hwang v. McMahill*, 103 Wn. App. 945, 954, 15 P.3d 172 (2000). Here, the parties' contract provides for attorney fees at either the trial or appellate level.

But the Norrises sued for fraud, a tort, not on the contract. Thus, they are not entitled to attorney fees.

We reverse and remand.

QUINN-BRINTNALL, A.C.J., and HOUGHTON, J., concur.