# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SHAMIM MOHANDESSI; JOSEPH, GRACE, individually as residential owners and derivatively on behalf of 2200 RESIDENTIAL ASSOCIATION, a Washington non-profit corporation, and derivatively on behalf of 2200 CONDOMINIUM ASSOCIATION, a Washington non-profit corporation, | ) ) ) ) ) ) ) ) ) | No. 77017-9-I consolidated with No. 77581-2-I |
| | ) | |
| Appellants, | ) ) | DIVISION ONE |
| v. | ) ) ) | |
| URBAN VENTURE LLC, a Washington limited liability company; VULCAN, INC., a Washington corporation; 2200 CONDOMINIUM ASSOCIATION, a Washington non-profit corporation; 2200 RESIDENTIAL ASSOCIATION, a Washington non-profit corporation; GARY ZAK, an individual, BRIAN CROWE, an individual; BRANDON MORGAN, an individual; and JOHN DOES 1-15, individuals or entities, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | PUBLISHED OPINION |
| Respondents. | ) ) ) | FILED: March 9, 2020 |

MANN, A.C.J. — This case concerns condominium assessments. Shamim

Mohandessi and Joseph Grace (collectively plaintiffs) appeal the trial court's dismissal

of their claims against the 2200 Residential Association (RA), the 2200 Condominium Association, Gary Zak, Brian Crowe, and Brandon Morgan (collectively MA), Urban Venture LLC, and Vulcan, Inc., (all collectively defendants). The plaintiffs brought direct and derivative claims alleging that the defendants violated the Washington Condominium Act (Condominium Act), chapter 64.34 RCW, the Washington Consumer Protection Act (CPA), chapter 19.86 RCW, breached statutory and fiduciary duties, and tortiously interfered with the MA Board's duties.

The plaintiffs contend that the trial court erred in (1) concluding that the statute of limitations barred their claims, (2) concluding that they could not bring claims derivatively on behalf of the RA and MA, (3) concluding that they lacked standing to bring claims against the MA for violations of the Condominium Act, (4) dismissing their breach of contract claims against the RA, (5) sua sponte dismissing their claim that a prior 2012 settlement agreement was void as the product of fraud and collusion, (6) awarding fees under the 2012 settlement agreement and costs under the Uniform Declaratory Judgment Act, RCW 7.24.100. The defendants cross appeal and argue that the trial court erred: (1) in concluding that the common expense liability allocation in the master declaration violates the Condominium Act, RCW 64.34.224(1) and (2) in not awarding their full attorney fees under the 2012 settlement agreement, or alternatively, under the Condominium Act.

We affirm the trial court's dismissal of all claims against the RA, Urban Venture, and Vulcan. We affirm the trial court's conclusion that the master declaration violated the Condominium Act because the allocation of common expenses violates RCW

-2-

64.34.224(1). We reverse the trial court's dismissal of the plaintiffs' claims against the MA for violations of the Condominium Act.

We affirm the trial court's award of attorney fees under the 2012 settlement agreement in favor of the RA, Urban Venture, and Vulcan. We vacate the award of attorney fees in favor of the MA.

Affirmed in part, reversed in part.

I.

## 2200 Westlake

This appeal concerns a mixed-use development located at 2200 Westlake Avenue in downtown Seattle (2200 Westlake) comprising of over 500,000 gross square feet, excluding underground parking. Milliken Urban Limited Partnership (Milliken) began the development of 2200 Westlake. Urban Venture LLC, a subsidiary of Vulcan Inc., invested in the project and developed it jointly with Milliken. Urban Venture bought out Milliken's interest midway through construction in 2005.

The development was completed in 2006. That same year Urban Venture executed and recorded a "master declaration" under the Condominium Act, creating a four-unit condominium called "2200, a condominium." The four units are comprised of: (1) the commercial unit, which leases 90,000 square feet of commercial retail shops; (2) the hotel unit, housing the 153-room Pan Pacific Hotel; (3) the food unit, leased to Whole Foods grocery store; and (4) the residential unit, comprised of 259 residential units, which has a separate sub-condominium association.

2200 Westlake is governed by, and acts through, the 2200 Condominium Association, a nonprofit corporation, which the parties refer to as the Master Association

(MA).[1] The owner of each unit of 2200 Westlake is a member of the MA. The MA is administered by a four-person board, with each owner electing one representative to hold the single vote allocated to each owner.

In 2006, Urban Venture also recorded a separate declaration for the 259-unit residential unit of 2200 Westlake. The "residential declaration" covers the 2200 Residential Association (RA). The RA is also organized as a nonprofit corporation. The RA board is elected by a majority of the residential unit owners. The RA board chooses a single member to represent it on the MA Board.

Urban Venture owned the commercial, hotel, and food store units from completion of the project, until selling the units to third parties: the commercial unit in March 2016, the food store unit in September 2016, and the hotel unit in February 2017. During Urban Venture's ownership, the MA board members were Vulcan employees, appointed by Urban Venture. The initial board members were Gary Zak, Hamilton Hazlehurst, and Brian Crowe.

Central to this litigation is the common expenses associated with the common elements of 2200 Westlake and the division of the common expenses between the four condominium units in the MA. The master declaration defines the "Common Elements" as "all portions of the Property and the Project which are outside the boundaries of a Unit, and improvements within the boundaries of a Unit which are designated as Common Elements or Limited Common Elements under the provisions of Article 3." "Common Expenses" are defined as:

> expenditures made by, or financial liabilities of the Association, together with any allocations to reserves. Common Expenses are funded by each

---

[1] The parties do not dispute that the 2200 Condominium Association is not actually a "master association" as that term is defined in the Condominium Act, RCW 64.34.020(28), .276.

-4-

Owner in accordance with its Allocated Interest, except that certain Common Expenses are specifically allocated to fewer than all Units or are specially allocated among Units based on usage or benefit, as more specifically set forth in Section 10.4.

Common Expense Liability

The common expense liability, and interest in the common elements, are determined by the units' declared value, which results in the "Allocated Interest Percentage." Exhibit B to the MA declaration shows the unit data and allocated interests for each unit.

| Unit Name | Unit Floor Area (Sq. Ft.) | Declared Value | CEL/ICE | Votes | Parking Spaces |
|---|---|---|---|---|---|
| Unit C (Commercial Unit) | 24,352 | $11,340,000 | 6.3 | 1 | 90 covered 36 uncovered |
| Unit R (Residential Unit) | 259,447 | $138,960,000 | 77.2 | 1 | 318 covered |
| Unit H (Hotel Unit) | 120,309 | $18,000,000 | 10.0 | 1 | 55 covered 2 uncovered |
| Unit F (Food Store Unit) | 43,616 | $11,700,000 | 6.5 | 1 | 272 covered 12 uncovered |
| Total | | $180,000,000 | 100% | 4 | |

"Declared value" is defined as "the value of each Unit as stated in Schedule B, which does not necessarily reflect market value and will not be affected by sales price." In contrast, the preamble to the MA declaration indicates that concerns about fair governance for all units culminated in "the decision to allocate many of the costs by square footage (for the sake of simplicity) or, if feasible, by separate metered usage." The common element liability, however, does not correspond to square footage. The RA declaration includes Schedule B, which allocates Unit R's common element liability to each condominium unit based on "relative area of Units."

Prior Litigation

Plaintiff Grace bought a residential unit at 2200 Residential in 2006. Grace considers himself an experienced real estate purchaser. Grace purchased a second unit at 2200 Residential in 2015, after this litigation began. Plaintiff Mohandessi, an attorney, purchased a residential unit at 2200 Residential in 2010.

Grace has been in conflict with the RA since April 2007. In protest to the RA Board's actions and assessments, Grace stopped paying his full dues in 2008. The RA sued Grace in 2011 and 2013 to collect unpaid dues and late charges.[2] Grace asserted defenses and counterclaims, alleging that the RA breached its fiduciary duty, committed fraud, trespass, and conversion, and held an invalid election. The trial court dismissed Grace's counterclaims and defenses, finding in favor of the RA.

From 2009 until 2012, the RA and MA pursued claims against Urban Venture and Vulcan under the WCA and CPA for construction defects. In November 2012, the RA, MA, Vulcan, and Urban Venture entered a settlement agreement. Urban Venture agreed to pay the RA $26,000,000 in exchange for release of the RA's claims against Urban Venture. The RA received $3,120,000 to use as it deemed appropriate, with the remaining $22,800,000 set aside for remediation. The validity and fairness of the common expense liability and allocation in the master declaration was raised during settlement discussions but did not become part of the 2012 settlement agreement.

Current Litigation

The plaintiffs filed this lawsuit against the various defendants in October 2015. The original complaint sought declaratory judgment that the MA violated the

---

[2] 2200 Residential Association v. Grace, No. 72651-0 (Wash. Ct. App. July 25, 2016) (unpublished).

Condominium Act and the MA declaration by "improperly and disproportionately shift[ing] costs of 2200 Westlake onto plaintiffs and other residential owners." The plaintiffs alleged that: (1) the MA and RA declarations were contracts, and that the MA and RA breached those contracts and the implied covenant of good faith and fair dealing, (2) the MA and RA boards breached their fiduciary duties, and (3) Urban Venture breached its fiduciary duties, and tortuously interfered with the MA and RA's performance of their contractual obligations under their respective declarations. The plaintiffs made the claims on behalf of themselves, as well as derivatively on behalf of the RA and double derivatively on behalf of the MA.

The defendants moved for judgment on the pleadings under CR 12(c). On February 12, 2016, the trial court dismissed the plaintiffs' direct claims against the MA for lack of standing, and the breach of contract claims against the RA under res judicata, to the extent that the events occurred before December 2014 (the date of Grace's settlement in his prior litigation). The court also dismissed the breach of an implied covenant of good faith and fair dealing, finding that there was no legal authority for an implied covenant under a condominium declaration. The trial court limited the plaintiffs' remaining claims based on the statute of limitations, RCW 4.16.080, to the extent they were based on events occurring more than three years before the plaintiffs filed suit in October 2015.

The defendants then moved for summary judgment. On September 29, 2016, the trial court granted in part and denied in part the defendants' motions. The court dismissed all claims asserted by the plaintiffs derivatively on behalf of the RA and MA. No claims remained against Urban Venture and the MA after the September 29, 2019,

order. The trial court granted the plaintiffs' request for a CR 56(f) continuance to perform additional discovery on the remaining direct claims against the RA. During discovery, Urban Venture indicated that it could not identify a specific formula for the declared value or the common expense liability, but that the declared value was likely the product of completed construction costs.

In December 2016, the plaintiffs amended their complaint, adding new claims challenging the common expense liability and adding Vulcan as a party. The plaintiffs amended their claims against the RA to include a claim for breach of the residential declaration arising from the RA's entry into the November 2012 settlement agreement. On December 20, 2016, the plaintiffs voluntarily dismissed their claims against the RA.

The plaintiffs were granted leave to amend their complaint twice more, in March 2017 and May 2017. The plaintiffs' new claims alleged that: (1) Urban Venture and the MA violated the Condominium Act, (2) Urban Venture, Vulcan, and certain MA board members, breached duties under the Condominium Act, (3) Urban Venture and Vulcan aided and abetted the MA's alleged breach of duties, (4) Urban Venture violated the CPA, and (5) Vulcan tortuously interfered with the plaintiffs' expectancy that the MA and RA, and respective boards, would comply with all applicable laws and duties. The plaintiffs also sought a declaratory judgment that the 2012 settlement agreement was "void and unenforceable as collusive, fraudulent, and against public policy" (referred to as the "twenty first claim"). The plaintiffs named the RA as a "nominal" defendant.

Prior to the plaintiffs' third amended complaint, the defendants moved for summary judgment dismissal of the plaintiffs' remaining claims in March 2017. The plaintiffs also moved for partial summary judgment.

In May 2017, the trial court dismissed all remaining claims on summary judgment including the plaintiffs' newest claims added in their third amended complaint. The court dismissed the twenty-first claim because "there [was] no evidence of fraud, collusion or undue influence" to create an issue of fact regarding the settlement agreement's validity. The trial court dismissed all other claims, finding the statute of limitations barred the plaintiffs' claims because all challenges related to the master declaration, which was recorded in 2006.[3]

As part of its ruling, the trial court determined that the common expense liability allocation in the MA declaration "does not comply with RCW 64.34.224(1) because the [MA] Declaration did not state the formula or method used to establish the allocation of common expenses due to the fact that the Declarant did not use a formula or method to establish the allocation of common expenses." The court rejected the defendants' argument that the table in exhibit B is the formula or method used to establish the percentage allocation.

The trial court found that the defendants were prevailing parties since the plaintiffs' claims were dismissed with prejudice. The defendants separately sought their attorney fees as the prevailing party under the Condominium Act, the master declaration, or the 2012 settlement agreement. The defendants also sought their litigation costs under the master declaration, the 2012 settlement agreement, and the Declaratory Judgment Act, RCW 7.24.100. The trial court awarded limited fees under the 2012 settlement agreement alone, and awarded costs under RCW 7.24.100.[4]

---

[3] Urban Venture and Vulcan, joined by the MA, argued that an alternative ground for dismissal was that the plaintiffs' claims were barred by the settlement agreement.

[4] The trial court's attorney fee award is more thoroughly explained in Section VIII below.

The plaintiffs appealed and the defendants cross appealed.

II.

The validity of the common expense liability allocation is central to the plaintiffs' grievances, thus we first address whether the declared value violates RCW 64.34.224(1). The trial court found that the declared value violated RCW 64.34.224(1). The defendants' cross appeals request that, if this court remands for further litigation, we review the trial court's conclusion. We agree with the trial court that the declared value used to determine the common expense liability violates RCW 64.34.224(1) because it does not state a method or formula for its basis.

We review questions of statutory interpretation de novo. Jametsky v. Olsen, 179 Wn.2d 756, 761-62, 317 P.3d 1003 (2014). The goal of statutory interpretation is to "ascertain and carry out the legislature's intent." Jametsky, 179 Wn.2d at 762. We give effect to the plain meaning of the statute, "derived from the context of the entire act as well as any related statutes which disclose legislative intent about the provision in question." Jametsky, 179 Wn.2d at 762 (internal quotations omitted). If the statute's language is unambiguous, then the inquiry ends. Jametsky, 179 Wn.2d at 762. If, however, the language is subject to more than one reasonable interpretation, we "may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent." Jametsky, 179 Wn.2d at 762.

A.

The plain language of the Condominium Act provides that a condominium declaration must allocate the division of undivided interests in the common elements

and state the formula or methods used to establish those allocations. Under RCW 64.34.224(1):

> The declaration shall allocate a fraction or percentage of undivided interests in the common elements and in the common expenses of the association, and a portion of the votes in the association, to each unit and state the formulas or methods used to establish those allocations. Those allocations may not discriminate in favor of units owned by the declarant or affiliate of the declarant.

The defendants contend that exhibit B meets the requirements of RCW 64.34.224(1). First, the defendants contend that the "statute permits the declarant to allocate . . . by size, value, and numbers of units or other appropriate basis." Accordingly, the defendants contend that "[b]ased on a plain-meaning analysis, the statute requires disclosure of two facts: (1) the 'fraction or percentage' allocated to each unit, and (2) the 'formula or method' that is the basis of that allocation." The defendants contend that exhibit B allocates common element expenses to each unit and that the common expense liability is the method that represents the basis of the allocation.

The defendants' argument ignores the last sentence of RCW 64.34.224(1), which states "[t]hose allocations may not discriminate in favor of units owned by the declarant or affiliate of the declarant." To support their argument, the defendants contend that "[a]ttaching an appraisal to the declaration or otherwise disclosing how declared values were chosen would add nothing in terms of disclosing how common expenses are allocated in a condominium." We disagree that disclosing the method would add nothing because the statute requires that the method not discriminate in favor of the Declarant. Exhibit B does not provide this court with any basis to evaluate whether the declared value discriminates in favor of the Declarant, thus it fails to meet the requirements of RCW 64.34.224(1).

-11-

The second sentence of RCW 64.34.224(1) informs our interpretation of the first sentence because it directly references the allocations discussed in the first sentence. We interpret each word of a statute and accord it meaning. State v. Roggenkamp, 153 Wn.2d 614, 624, 106 P.3d 196 (2005). Disclosing the formula or method underlying the declared values ensures that the allocations do not discriminate in favor of units owned by the declarant or an affiliate of the declarant. A declarant cannot defend that their allocations do not discriminate in their favor without reference to the formula or method underlying the division of common expenses. Here, Urban Venture indicated that the declared value

> was not produced by a set formula, but rather was a product of the reasonable value and the cost of completed construction. The hotel, food, and commercial spaces were substantially completed for the condominium purposes prior to final tenant improvements that were part of various leases. The residential units included completed interior fixtures, finished, and appliances.

Urban Venture was unable, however, to produce evidence supporting the calculation for the declared valued in exhibit B. Further, Urban Venture's explanation was not included in the MA declaration accompanying exhibit B.

The defendants also contend that Lake v. Woodcreek Homeowners Ass'n., 169 Wn.2d 516, 243 P.3d 1283 (2010), supports their interpretation that the allocation can be set arbitrarily, so long as the declarant discloses the values in the declaration. (2010). The defendants cite Lake for the proposition that there, the court found that "value" in the Horizontal Property Regimes Act (HPRA) "need not relate to an apartment's fair market value or any other criteria" and that under the HPRA, "the values may be set arbitrarily, as long as they are stated in the declaration." 169 Wn.2d at 534.

We disagree that Lake is relevant to our plain-meaning analysis. In Lake, our Supreme Court was interpreting RCW 64.32.050(1) which states, "[e]ach apartment owner shall be entitled to an undivided interest in the common areas and facilities in the percentage expressed in the declaration. Such percentage shall be computed by taking as a basis the value of the apartment in relation to the value of the property." RCW 64.32.050(1); see Lake, 169 Wn.2d at 529. The HPRA statutory language discussed in Lake is substantially different from the Condominium Act. The HPRA does not address discriminatory practices. In contrast, the Condominium Act states that the methods or formulas shall be stated and that allocations may not discriminate in favor of units owned by the declarant. Further, the HPRA does not reference methods or formulas. Thus, Urban Venture's argument that the declared value, without more, is itself a method or formula and compliant with the Condominium Act is without merit.

### B.

Legislative history also supports our interpretation of the plain-meaning of RCW 64.34.224(1). On the issue of allocating costs for common expenses, the comments in the Senate Journal establish that the legislature wanted declarants to explain the formula or method underlying those allocations. The comments state that RCW 64.34.224(1) "does not require that the formulas used by the declarant be justified, but it does require that the formulas be explained." 2 SENATE JOURNAL, 51st Leg., Reg. Sess., App. at 2061 (Wash. 1990).

> If size is chosen as a basis of allocation, the declarant must choose between reliance on area or volume, and the choice must be indicated in the declaration. The declarant might further refine the formula by, for example, excluding unheated areas from the calculation or by partially discounting such areas by means of a ratio. Again, the declarant must indicate the choices he made and explain the formulas he has chosen.

2 SENATE JOURNAL, App. at 2061 (emphasis added). The legislature intended that the declarant include the formula or method underlying the common expense element cost allocations in the declaration.

The trial court did not err when it concluded that the declared valued in the MA declaration violates RCW 64.34.224(1).

III.

The plaintiffs contend that the trial court erred in its May 27, 2017, summary judgment order by dismissing claims against the MA based on the statute of limitations. While the plaintiffs agree the relevant statute of limitations is three years under RCW 4.16.080(2), they argue that a new cause accrues every year when the MA allocates the common expenses between the units, using the invalid declared value in exhibit B. We agree.

We review summary judgment decisions de novo. Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 281, 313 P.3d 395 (2013). "Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Int'l Marine Underwriters, 179 Wn.2d at 281; CR56(c).

RCW 4.16.080(2) states that "an action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated" shall be commenced within three years. The determination of whether the statute of limitations bars a plaintiff's claim depends on when the plaintiff's cause of action accrued. Haslund v. City of Seattle, 86 Wn.2d 607, 619, 547 P.2d 1221 (1976). The general rule is "that a cause of

action accrues and the statute of limitations begins to run when a party has the right to apply to a court for relief." Haslund, 86 Wn.2d at 619. The issue of how the statute of limitations applies to condominium association assessments that accrue on a yearly basis is an issue of first impression.

Generally, the right to apply to a court for relief requires each element of the action be susceptible to proof, this includes actual loss or damage. Haslund, 86 Wn.2d at 619. "The determination of the time at which a plaintiff suffered actual and appreciable damage is a question of fact." Haslund, 86 Wn.2d at 620. "In some circumstances, of course, a court may be able to conclude as a matter of law that no triable issue of fact exists as to when plaintiff suffered actual and appreciable damage giving rise to a practical legal remedy." Haslund, 86 Wn.2d at 621.

Here, the plaintiffs suffer actual and appreciable damage when they pay an assessment that violates RCW 64.34.224(1). Under RCW 64.34.090, "[e]very contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement." The MA declaration was amended in 2010 to allow the MA board the discretion to use another method or formula to allocate the common expenses between the four units.[5] Each time the MA board chose to use the allocations in exhibit B, it violated its duty of good faith to the RA members by allocating in a manner that violates RCW 64.34.224(1). Thus, each time the MA board passes a budget, the RA members suffer actual and appreciable damage and a new cause of action accrues for violations of RCW 64.34.224(1) and RCW 64.34.090.

---

[5] The MA declaration amendment states "Any Common Expense, or portion thereof, benefitting fewer than all of the Units may be assessed by the Board exclusively against the Units benefitted."

Therefore, the trial court erred when it concluded that the plaintiffs' cause of action accrued in 2006. As members of the RA, the plaintiffs' causes of action accrue each time the MA board passes a budget. The plaintiffs may bring claims for their individual damages accruing between 2013 and 2016—three years before filing the complaint.

IV.

The plaintiffs next argue that the trial court erred in its September 29, 2015, order on summary judgment, when it dismissed their derivative claims brought on behalf of the RA and MA. The plaintiffs contend that the trial court erred as a matter of law in concluding that individual condominium association members do not have derivative standing. We disagree.

The parties do not dispute that both the MA and RA were incorporated under the Washington Nonprofit Corporation Act (WNCA), chapter 24.03 RCW. The WNCA was enacted in 1967. See Laws of 1967, ch. 235. The WNCA governs all aspects of nonprofit corporations, including incorporation, permissible purposes and dissolution. See, e.g., RCW 24.03.015, .020, .025, .220-276. Nonprofit corporations are managed by an elected or appointed board of directors according to the corporation's articles of incorporation or bylaws. RCW 24.03.095 - .100. In contrast to for-profit corporations, which are organized under the Washington Business Corporation Act (WBCA), chapter 23B.01 RCW, nonprofit corporations do not have shareholders, but instead may "have one or more classes of members or may have no members." RCW 24.03.065(1); compare RCW 23B.01.400(34).

The WBCA expressly authorizes shareholders of for-profit corporations to bring derivative actions on behalf of the corporation. RCW 23B.07.400. "In a derivative suit, a stockholder asserts rights or remedies belonging to the corporation for the corporation's benefit." Haberman v. Washington Pub. Power Supply Sys., 109 Wn.2d 107, 147, 744 P.2d 1032 (1987). The WNCA, in contrast, does not authorize members to bring derivative actions on behalf of the nonprofit corporation against third parties. Instead, the WNCA provides only two circumstances where a member may seek judicial relief on behalf of the nonprofit corporation: (1) a "representative suit" against an officer or director exceeding their authority, or (2) in order to seek dissolution of the nonprofit where the directors have acted "in a manner that is illegal, oppressive, or fraudulent" or "where assets are being misapplied or wasted." RCW 24.03.040, .266(1).

Relying on the "plain and unambiguous" language of the WNCA, as well as its legislative history, the court rejected the plaintiffs' argument that nonprofit members have an equitable common law right to bring derivative actions in Lundberg ex rel. Orient Found. v. Coleman, 115 Wn. App. 172, 176, 60 P.3d 595 (2002). In Lundberg, a director attempted to bring a derivative action on behalf of a nonprofit corporation against other directors, alleging that they had breached their fiduciary duties. 115 Wn. App. at 176. This court held that the legislature intended to limit derivative lawsuits to the narrow circumstances addressed in the statute, reasoning it "carefully delineates when actions may be brought on behalf of the corporation." Lundberg, 115 Wn. App. at 177 (citing RCW 24.03.040 and former RCW 24.03.265).

Under Lundberg, plaintiffs do not have a right to bring a derivative action on behalf of the nonprofit RA or MA. Their efforts to distinguish Lundberg are not

-17-

persuasive. The trial court did not err when it dismissed the plaintiffs' derivative claims brought on behalf of the RA and MA.

V.

While the WNCA does not authorize individual members to bring derivative actions on behalf of a nonprofit corporation, this does not resolve whether individual members may bring individual claims against RA or MA. The plaintiffs contend that the trial court erred in its February 12, 2016, order by dismissing the plaintiffs' individual claims against the RA and MA for breach of good faith due to their lack of standing. The plaintiffs also contend the trial court erred in denying their motion for leave to amend their complaint to add allegations of breach of the declaration or the Condominium Act due to standing. Because the plaintiffs have standing under the Condominium Act, we agree.

The MA governs all of 2200 Westlake based on the master declaration. One unit of the MA—the RA—is a residential condominium within the larger condominium. While individual residents of the RA are not directly parties to the master declaration, they own a portion of the overall master condominium and are bound by the terms of the master declaration. This includes the common expense allocation within the MA.

The Condominium Act broadly allows

> If a declarant or any other person subject to this chapter fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. The court, in an appropriate case, may award reasonable attorney's fees to the prevailing party.

RCW 64.34.455 (emphasis added).

-18-

Further, the Condominium Act provides that "[t]he remedies provided by this chapter shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed." RCW 64.34.100. Thus, by the plain language, the Condominium Act provides a direct action for members to sue their condominium association for violations of the Condominium Act or declaration.[6]

This interpretation is further supported by the legislative history. The Senate Journal comments state that RCW 64.34.455:

> provides a general cause of action or claim for relief for failure to comply with the Act by either a declarant or any other person subject to the Act's provision. Such person might include unit owners, persons exercising a declarant's right of appointment pursuant to RCW 64.34.308(4), or the association. A claim for appropriate relief might include damages, injunctive relief, specific performance, rescission or reconveyance if appropriate under the law of the state, or any other remedy normally available under state law. The section specifically refers to "any person or class of persons" to indicate that any relief available under the state class action statute would be available in circumstances where a failure to comply with this Act has occurred. This section permits attorney's fees to be awarded in the discretion of the court to any party that prevails in any action.

2 SENATE JOURNAL, App. at 2091. This comment indicates that the legislature intended to allow condominium members the right to sue their association for violations under the Condominium Act.

Accordingly, we conclude that the trial court erred when it dismissed the plaintiffs' direct action against the MA for breach of good faith, and denied the plaintiffs' motion to

---

[6] The defendants provided supplemental authorities explaining that an individual may not assert a claim that is derivative in nature. We agree with these authorities, but they do not aid in our analysis because RCW 64.34.445 provides direct standing for the plaintiffs against both the RA and MA.

amend and add claims against the MA for violations of the Condominium Act based on standing.[7]

VI.

The plaintiffs next challenge the trial court's decision in its February 12, 2016, order on the defendants' motion for judgment on the pleadings, concluding the plaintiffs' breach of contract claims against the RA were barred by res judicata. The trial court's decision was based on the prior litigation between Grace and the RA. While we agree that, based on the pleadings before the trial court, it appears Mohandessi's individual claims would not be barred by res judicata, we need not reach this issue because the plaintiffs' complaint failed to state a cause of action for breach of contract.

We review a CR 12(c) motion for judgment on the pleadings de novo. M.H. v. Corp. of Catholic Archbishop of Seattle, 162 Wn. App. 183, 189, 252 P.3d 914 (2011). A dismissal under CR 12(c) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief." Haberman, 109 Wn.2d at 120 (internal quotation marks omitted).

The plaintiffs' original complaint alleged two claims against the RA: (1) breach of contract based on the assertion that the master and residential declarations were contracts and (2) breach of implied covenant of good faith and fair dealing again based on the assertion that the master and residential declarations were contracts. These claims fail as a matter of law.

---

[7] As discussed above, the trial court concluded, and we agree, that the common expense allocation violates RCW 64.34.224(1). The WNCA also imposes an obligation of good faith in the performance of duties. RCW 64.34.090.

"A contract is a promise or set of promises for the breach of which gives a remedy, or the performance of which the law in some way recognizes as a duty." Restatement (Second) of Contracts § 1 (1981); accord Washington Fed'n of State Emps., AFL-CIO, Council 28, AFSCME v. State, 101 Wn.2d 536, 549, 682 P.2d 869 (1984). In contrast, condominium declarations are not promises between parties, but are recorded real property instruments. Bellevue Pac. Ctr. Condo. Owners Ass'n v. Bellevue Pac. Tower Condo Ass'n, 124 Wn. App. 178, 188, 100 P.3d 832 (2004). Condominium owners are not bound to declarations under the same rules as parties to a contract. Rather, owners have the power to amend a declaration by vote. See RCW 64.32.090(13); RCW 64.34.264(1). Here, the residential declaration may be amended by consent of more than 67 percent of the owners.

Because the plaintiffs failed to allege a cause of action supporting a breach of contract claim against the RA, dismissal of the plaintiffs's breach of contract claims was appropriate.[8]

## VII.

The plaintiffs next contend that the trial court erred when it dismissed their twenty-first claim: that the 2012 settlement agreement was void as the product of fraud and collusion. The plaintiffs argue that the trial court dismissed their claim sua sponte. We disagree.

---

[8] The plaintiffs subsequently amended their complaint to add claims against the RA for breach of the residential declaration arising from the RA's entry into the November 2012 settlement agreement. On December 20, 2016, the plaintiffs voluntarily dismissed their claims against the RA. Thus, as of December 20, 2016, there were no claims remaining against the RA.

On March 17, 2017, the remaining defendants moved for summary dismissal of all of the plaintiffs' remaining claims. Vulcan and Urban Venture argued, among other things, that the 2012 settlement agreement barred the plaintiffs' claims. Before the plaintiffs responded to the motions for summary judgment they sought leave to amend their complaint to add their twenty-first claim: that the 2012 settlement agreement was void as collusive, fraudulent, and against public policy. In support of their motion, plaintiff submitted argument and multiple exhibits in support of the twenty-first claim. The plaintiffs then argued in response to the motions for summary judgment that the 2012 settlement agreement was void as the product of fraud and collusion.

By the time of the summary judgment hearing, the trial court had granted leave to amend, and the plaintiffs had filed their third amended complaint. During argument Urban Venture and Vulcan confirmed that they were seeking dismissal of all claims, including specifically the twenty-first claim based on the briefing submitted. The plaintiffs did not object that the issue had not been properly raised or adequately briefed. The plaintiffs instead argued the merits of their claim.

Because the plaintiffs did not object to the trial court deciding the twenty-first claim, the plaintiffs' argument that the dismissal was sua sponte fails. The plaintiffs have not explained how the twenty first claim can survive a motion for summary judgment and therefore have waived this argument on appeal.

VIII.

All parties appeal the trial court's award of attorney fees and costs. The plaintiffs challenge the court's award of attorney fees under the 2012 settlement agreement. The defendants cross appeal and challenge the trial court's decision to reduce their attorney

fees to the portion spent defending the 2012 settlement agreement. The defendants further challenge the trial court's failure to award attorney fees under Condominium Act. We affirm the trial court's award of fees under the 2012 settlement agreement to Urban Venture, Vulcan, and the RA. Because we reverse the trial court's dismissal of the plaintiffs' claims against the MA we vacate the award of fees to the MA.

In Washington, attorney fees may be awarded when authorized by a contract, a statute, or a recognized ground in equity. Fisher Props., Inc. v. Arden-Mayfair, Inc., 106 Wn.2d 826, 849-50, 726 P.2d 8 (1986). Whether a contract or law authorizes an attorney fee award is question of law and reviewed de novo. Kaintz v. PLG, Inc., 147 Wn. App. 782, 786, 197 P.3d 710 (2008). Whether the amount of fees awarded was reasonable is reviewed for abuse of discretion. Ethridge v. Hwang, 105 Wn. App. 447, 460, 20 P.3d 958 (2001). We review the trial court's interpretation of statutory costs provisions de novo. McConnell v. Mothers Work, Inc., 131 Wn. App. 525, 532, 128 P.3d 128 (2006).

## A.

The 2012 settlement agreement provides for prevailing party fees "arising from the need to take action to enforce this Agreement, including mediation, arbitration, or litigation." The trial court awarded defendants their attorney fees "they needed to incur to take action to enforce the Settlement Agreement."

The plaintiffs contend that the RA owners are not bound by the terms of the 2012 settlement agreement for several reasons. The plaintiffs contend, "the residents were not involved in negotiations, nor were they represented by counsel." And further, the RA owners "never voted on, let alone approved, the terms of the settlement agreement;

-23-

the [RA owners] did not sign the settlement agreement; [RA owners] were not told that the settlement agreement could impact their personal rights or liabilities; and residents were not told that a settlement had been reached until after the agreement had been executed."

The plaintiffs' argument fails because RCW 64.34.304 provides unit owners' associations with the power to "institute, defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium" and "make contracts and incur liabilities." RCW 64.34.304(1)(d), (e). The residential declaration provides the same owners' association powers. In the 2012 settlement agreement, RA means "any officer, director, manager, member, unit owner, principal, partner, predecessor, successor, agent, shareholder, and/or employee." Thus, the 2012 settlement agreement intended to bind RA members.

Our Supreme Court has recognized that in a condominium "each owner, in exchange for the benefits of association with other owners, must give up a certain degree of freedom of choice which he [or she] might otherwise enjoy in separate, privately owned property." Lake, 169 Wn.2d at 535 (citation and internal quotation marks omitted). Thus, the RA had the authority to enter and bind the RA owners because they agreed to give up certain freedoms, such as being signatories on a settlement agreement where the RA settled construction defects on behalf of the association and the RA owners. The plaintiffs have not cited any part of the residential declaration that requires the RA owners to vote before the RA enters a settlement

agreement for construction defects, thus their argument that the RA owners are not bound because they did not vote fails.

The trial court did not err in awarding the defendants attorney fees under the 2012 settlement agreement.

B.

While the trial court awarded the defendants their attorney fees under the 2012 settlement agreement, it limited its award to time spent defending against the claim that the 2012 settlement agreement was void.

The RA originally requested attorney fees of $380,862.50 for its entire defense. The trial court subsequently granted the RA's reduced fee request of $74,245.00 for its work defending the 2012 settlement agreement. The court also granted the MA's reduced fee request, awarding $49,521. The trial court rejected Urban Venture and Vulcan's reduced fee request of $813,605 and reduced it further to $299,198.

The defendants argue that the trial court erred because all of the claims involved a common core of facts or legal theories. The trial court carefully considered this claim below explaining:

> Plaintiffs brought a total of 21 claims, of which thirteen made no reference to the Settlement Agreement and sought no relief that would appear to require any of the defendants to incur fees arising from the need to enforce that agreement. Plaintiffs brought their first, second, third, fifth, seventh, eighth, twelfth, fourteenth, fifteenth, sixteenth, nineteenth, and twentieth claims individually and/or derivatively against various defendants for allegedly violating the Washington Condominium Act by failing to state the formulas and methods used to establish the "Declared Value" on which they allegedly based the allocation of common expenses, by oppressing RA and its owners, by aiding and abetting those actions, by breaching the Declaration, and by tortious interference. Plaintiffs' eighteenth claim sought an accounting, derivatively, on behalf of the RA against the MA. Those claims did not involve a common core of facts or are based on related legal theories arising from defendants' need to

enforce the Settlement Agreement. Defendants are not entitled to an award of fees incurred in defense of those claims and must segregate those fees.

Plaintiff's fourth, ninth, tenth, and seventeenth claims mentioned the Settlement Agreement. The first of those claimed breach of the Residential Declaration and Governing Documents by, among other things, failing to reach an adequate settlement for construction defects in the 2200 Condominium. Plaintiffs' ninth and seventeenth claims for unjust enrichment were against UV individually and Vulcan derivatively, respectively. Those claims related to UV and/or Vulcan's alleged receipt of benefits that should have flowed to residents, which allegedly included improper settlement proceeds, among others. Plaintiffs brought their tenth claim for violation of the Washington Condominium Act and Governing Documents derivatively on behalf of RA against UV and MA and derivatively on behalf of MA against UV. Plaintiffs primarily based this claim on the misallocation of common expenses and the appointment of conflicted board members, but that claim included a reference to the settlement of construction defect claims. Notably, none of those claims sought recession or otherwise indicated that the Settlement Agreement should not be enforced. But to the extent defendants can show that they incurred fees arising from the need to enforce the Settlement Agreement in relation to those claims and they segregate those fees, they would be entitled to such an award.

Plaintiffs' twenty-first claim is the one claim that truly appears aimed at the enforceability of the Settlement Agreement. In that claim, plaintiffs contend that the Settlement is void, collusive, fraudulent, and against public policy. This claim also relates to plaintiffs' sixth prayer for relief that seeks a judgment declaring that agreement unenforceable (the other eight prayers for relief do not mention the Settlement Agreement). Defendants are entitled to those fees incurred in relation to this claim so long as they segregate them from those they did not incur arising from the need to enforce the Settlement Agreement.

We cannot conclude that the trial court abused its discretion in limiting the fees it awarded under the 2012 settlement agreement.

C.

The defendants next challenge the trial court's decision to not award attorney fees under the Condominium Act. The Condominium Act provides that "the court, in an appropriate case, may award reasonable attorney's fees to the prevailing party." RCW

64.34.455. The trial court denied the defendants' claim for attorney fees under the Condominium Act and denied their motions for reconsideration.

As the trial court explained in denying Urban Venture and Vulcan's motion for reconsideration:

> This Court held that UV and Vulcan were prevailing parties, but this Court did not believe this was an appropriate case to award their attorney's fees for the reasons stated on the record at the September 12, 2017 hearing. UV and Vulcan rely on Bilanko v. Barclay, [185 Wn.2d 443, 375 P.3d 591 (2016)] Defendants contend this Court erred in reaching the latter conclusion. They argue that Bilanko is "factually indistinguishable" from this case, apparently because the Supreme Court affirmed the dismissal of the plaintiff's claims on statute of limitations grounds and noted that the plaintiff could have moved.
>
> Despite those two similarities, Bilanko is dissimilar from this case in several critical respects that UV and Vulcan do not acknowledge.[9] Here, plaintiffs brought their claims not to enrich themselves but to derivatively benefit the 2200 Residential Association (RA) and directly benefit their fellow condo owners. They brought those claims as consumers to address what they perceived to be the unfair imposition of costs on RA by the [MA], Urban Venture LLC, and Vulcan Inc. Notably, this Court found merit to that claim and a violation by defendants of the Washington Condominium Act: the Declared Values that the Declaration used to apportion those costs were simply made-up values rather than being based on a method or formula that is capable of calculation. Further, while the defendants make much of this Court's reference to the "scorched earth" litigation in this case, this Court noted that both sides were to blame. Indeed, plaintiffs' opposition to defendants' motions for reconsideration sets forth many examples of defendants' own role in driving up the costs of this litigation.

---

[9] Even if Bilanko was indistinguishable in all respects with this case, and it is plainly not, the Washington Supreme Court merely exercised its discretion to award fees in that case. Nowhere in that decision did the Washington Supreme Court hold that it would have been an abuse of discretion for a court to not award fees when faced with those facts.

Similarly, as the trial court explained in denying the RA's motion for reconsideration:

> RA contends this Court erred primarily by applying to RA its rationale for not awarding fees to [MA], and Vulcan and Urban Venture, LLC. . . . In its oral ruling this Court did emphasize that plaintiffs, in their

role as consumers and on behalf of similarly situated residents, brought consumer protection claims of self-dealing and illegal control against the defendants. RA fails to acknowledge the reason why plaintiffs had to occupy those roles: RA failed to take any action to address the fact that the Declared Valued in the Declaration were based on made-up values rather than being based on a method or formula that is capable of calculation. Further, RA joined forces with the other defendants to actively oppose plaintiffs' claims at every turn. Finally, while RA makes much of this Court's reference to the "scorched earth" litigation in this case, this Court notes that RA shared much of the blame. Indeed, plaintiffs' opposition to the [defendant] motion for reconsideration sets forth many examples of defendants' own role in driving up the costs of this litigation.

We agree with the trial court. An award of attorney fees under RCW 64.34.455 is discretionary. We cannot conclude that the trial court abused its discretion in denying to award attorney fees under the Condominium Act.

We affirm the trial court's denial of attorney fees to Urban Venture, Vulcan, and the RA under the Condominium Act.

IX.

The plaintiffs finally argue that the trial court erred by awarding costs for "mediator fees, meals, travel, expert fees, consultant fees, or document review expenses" under the Declaratory Judgment Act, RCW 7.24.100. The plaintiffs contend that "costs" should have been limited to costs allowed under RCW 4.84.010. We disagree.

We review questions of statutory interpretation de novo. State v. Dennis, 191 Wn.2d 169, 172, 421 P.3d 944 (2018). If a statute's meaning is plain on its face, then the court must give effect to the plain meaning as an expression of legislative intent. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

RCW 7.24.100 provides "In any proceeding under this chapter, the court may make such award of costs as may seem equitable and just." RCW 7.24.100 "gives the

court broader discretion with regard to costs than courts have in other kinds of proceedings." 15 DOUGLAS J. ENDE, WASHINGTON PRACTICE: CIVIL PROCEDURE § 42.24 (3d ed. 2018). The legislature's use of the word "may" confers discretion. Strenge v. Clarke, 89 Wn.2d 23, 28, 569 P.2d 60 (1977). Empowering a court to do what is "equitable" and "just" also indicated broad discretion. Farmer v. Farmer, 172 Wn.2d 616, 624, 259 P.3d 256 (2011). Nothing in the statute limits a court's discretion.

The trial court did not abuse its discretion in awarding costs under RCW 7.24.100.

## X.

All parties request attorney fees on appeal. Under RAP 18.1, we may grant attorney fees "if applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." As discussed above, the Condominium Act grants discretion for the court "in an appropriate case," to award reasonable attorney fees to the prevailing party. RCW 64.34.455. Here, RA, Urban Venture, and Vulcan are the prevailing parties, thus we grant them attorney fees on appeal. Because the plaintiffs prevail in their claim against the MA, we award the plaintiffs their reasonable attorney fees on appeal of claims against the MA.

## SUMMARY

We affirm the trial court's dismissal of all claims against the RA, Urban Venture, and Vulcan. We affirm the trial court's conclusion that the master declaration violated the Condominium Act because the allocation of common expenses violates RCW 64.34.224(1). We reverse the trial court's dismissal of the plaintiffs' claims against the MA for violations of the Condominium Act.

We affirm the trial court's award of attorney fees under the 2012 settlement agreement in favor of the RA, Urban Venture, and Vulcan. We vacate the award of attorney fees in favor of the MA.

Affirmed in part, reversed in part.

_Mann, ACJ_

WE CONCUR:

_Chun, J._          _Schindler, J.P.T._